FRANCIS LECKRONE *et al.*, Plaintiffs-Appellants, v. THE CITY OF SALEM, Defendant-Appellee.

Fifth District    No. 5—85—0604

Opinion filed January 29, 1987.

Sharon Sigwerth Costa, of Mt. Vernon, for appellants.

James B. Wham, of Wham & Wham, of Centralia, and Michael R. Jones, of Branson, Jones & Stedelin, of Salem, for appellee.

JUSTICE JONES delivered the opinion of the court:

Plaintiffs appeal a judgment entered upon the granting of defendant's motion to dismiss for failure to state a cause of action as to three counts of their four-count complaint. In its judgment upon the three counts of the complaint, the trial court, *sua sponte*, made a finding pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)) that there was no reason to delay appeal. The defendant did not cross-appeal as to the denial of its motion to dismiss the fourth count of plaintiffs' complaint.

The causes of action the plaintiffs sought to assert in their complaint arose from defendant's ownership and operation of a sanitary landfill and a sewage disposal plant adjacent to real estate owned by plaintiffs. Count I of plaintiffs' complaint was by all plaintiffs. It alleged that plaintiffs were deprived of the peaceable use and enjoyment of their property because defendant permitted refuse to be blown upon their lands and permitted vile odors to emanate from their landfill. The prayer of count I was for damages in excess of $15,000 and an injunction. Count II was by plaintiffs Leckrone alone. In it they alleged that defendant's operation of the landfill and sewage disposal plant permitted seepage to pollute a creek that ran through plaintiffs' land and served as a water supply for their dairy operation and that such pollution was continuous. The prayer of count II was for damages in excess of $15,000. Count III was by plaintiff Meador alone. In it he alleged that defendant, by raising

berms or mounds of dirt to cover garbage in the operation of its landfill, had caused surface water to be diverted upon and across plaintiff's land causing an interference with cultivation and damage to crops. The prayer of count III was for an injunction that would compel defendant to cease the wrongful diversion of surface water across plaintiff's land and require the restoration of the flow of surface water to its former natural course. Count IV was by plaintiff Meador alone. In it he alleged acts of trespass by agents or employees of defendant who, in the operation of a bulldozer or heavy equipment, entered plaintiff's land and destroyed crops and damaged the land, trees, and fences. The prayer of count IV was for damages in excess of $15,000.

Following service of summons, defendant filed its motion to dismiss the complaint. The motion was signed by attorney Michael R. Jones of the law firm of Branson, Jones & Stedlin, city attorneys for defendant, and by James B. Wham of the law firm of Wham & Wham. On the date that argument was to be heard on the motion to dismiss, plaintiff's attorney filed a motion to recuse the law firm of Wham & Wham as attorneys representing defendant upon the ground that Wham & Wham was at that time representing one of the plaintiffs, Doy E. Meador, in a suit then pending in the same court, *Meador v. Meador, et al.*, cause No. 82—CH—32, and because of such representation a conflict of interest was created and ethical-conduct canons were being violated, all of which required the court to recuse the firm of Wham & Wham from the case. (The term "recuse" is that used by plaintiffs rather than the seemingly more appropriate term "disqualify." We will, however, continue to use the term "recuse.") Defendant filed an objection to the motion to recuse.

Hearing on the motion to dismiss plaintiffs' complaint was suspended pending disposition of the motion to recuse. Hearing on the motion the recuse was held and evidence taken. Richard Carey of the Wham firm testified that he had filed a partition suit for Doy Meador upon a 40-acre tract of land located many miles from the Salem landfill site and that there was no connection between the tract being partitioned and any of the lands of either the plaintiffs or the defendant in the instant suit. Carey further stated that the partition case was at the point where the court was to appoint a commissioner who would make a determination whether the land would be divided among the parties or sold at public sale. Carey stated also that he had not discussed any aspect of this case with Doy Meador and had received no information from anyone concern-

ing this case. He intended to have the firm of Wham & Wham withdraw from the partition case they were conducting on Meador's behalf, if permitted to do so by the court, and would ask for no fees, only reimbursement of expenses. Michael Jones, city attorney for defendant, testified that the firm of Wham & Wham was currently acting as attorney for defendant in a case pending in Effingham County, had served as attorney for defendant on other occasions, and that it was at his suggestion that Wham & Wham had been retained as defense counsel in this case. James B. Wham, a partner of the firm of Wham & Wham, testified that no information of any kind had come to any member of the firm from Doy Meador. Following the hearing on the motion to recuse, the Wham firm filed its motion to withdraw as attorney for Doy Meador in the partition case. No objection was entered by Meador, and, several days later, an order was entered granting the motion for leave to withdraw. Seven days after that order, an order was entered in this case denying plaintiffs' motion to recuse Wham & Wham as attorney for defendant.

The court then turned its attention to defendant's motion to dismiss all four counts of plaintiffs' complaint. The principal issues raised by defendant's motion were concerned with the application of the Local Government and Governmental Employees Tort Immunity Act (hereinafter Tort Immunity Act or Act) (Ill. Rev. Stat. 1983, ch. 85, par. 1—101 *et seq.*). Defendant contends that plaintiffs failed to comply with the two-year limitation for commencing an action as provided in section 8—101 of the Tort Immunity Act (Ill. Rev. Stat. 1983, ch. 85, par. 8—101) and failed to give the one-year notice of injury or cause of action as provided in 8—102 of the Tort Immunity Act (Ill. Rev. Stat. 1983, ch. 85, par. 8—102). After hearing arguments and considering the briefs submitted by the parties, the trial court prepared its "judgment and order" that included extensive findings of fact and conclusions of law. The judgment dismissed counts I, II, and III of the complaint with prejudice and in bar of action, denied the motion to dismiss as to count IV of the complaint, and directed defendant to plead thereto within 21 days. Upon its own motion the court made the finding provided by Supreme Court Rule 304(a) that there was no reason to delay enforcement or appeal, and appeal plaintiffs did.

It was plaintiffs' position before the trial court that the Tort Immunity Act was applicable to injuries only, that their actions in counts I and II were based on a common law nuisance theory, in count III of a common law riparian theory, and in count IV upon a

common law trespass theory. Plaintiffs also contended that defendant waived the immunity of the Tort Immunity Act by the purchase of insurance as provided by section 9—103 of that Act. Defendant argued that the failure to give the notice required by section 8—102 of the Act and the failure to commence the action within two years as required by section 8—101 of the Act required the dismissal of all four counts of the complaint.

In its judgment the trial court found that the Tort Immunity Act was applicable to plaintiffs' action. Although the several counts of plaintiffs' complaint were based upon common law theories of nuisance, riparian rights, and trespass, the court determined by reference to common law pleading authorities that such theories nevertheless sounded in tort. As a consequence, the court found the Tort Immunity Act necessitated the dismissal of counts I, II, and III of the complaint. As to count IV, the court found that counsel for defendant had admitted during argument on the motion to dismiss that the defendant had purchased insurance against the liability asserted in that count, and, accordingly, thereby waived the immunity provided by the Tort Immunity Act, and defendant's motion to dismiss count IV was denied.

Although the judgment of the trial court was expressly based upon the application of the Tort Immunity Act, it also ruled upon other matters raised by defendant's motion to dismiss. It adjudged that plaintiffs were forever barred by the Tort Immunity Act only as to such acts of the defendant that occurred prior to the filing of plaintiffs' complaint; if the acts complained of were ongoing, a new action could be commenced as to acts transpiring subsequent to the filing of the complaint. The court also found that count I of the complaint was duplicitous since it combined two separate causes of action, but the court noted that because of section 2—1006 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1006), severance would be discretionary, not required, and that no prejudice would result to defendant since common questions of law and fact were presented.

We think it appropriate first to consider the order of the trial court that denied plaintiffs' motion to recuse the law firm of Wham & Wham as attorneys for defendant. With regard to the recusal issue, plaintiffs rely on Canons 4, 5, 7, and 9 of the Code of Professional Responsibility adopted by our supreme court. (87 Ill. 2d Canons 4, 5, 7, and 9.) While conceding that the conduct of the Wham firm as shown by the evidence at the hearing on the motion to recuse was not expressly violative of any of the canons governing con-

duct of attorneys, they argue that an attorney should not be allowed to represent two clients adverse to one another even in separate and unrelated cases.

■ Defendant contends that this court has no jurisdiction to consider the order of the trial court that denied plaintiffs' motion to recuse the firm of Wham & Wham as attorneys for the defendant. That order, entered on May 2, 1985, predated by four months the judgment of September 3, 1985, that is now before us. The order denying recusal was a final one, not related to the judgment dismissing counts I, II, and III of the complaint, and, in the absence of another supreme court rule providing for an interim appeal, could be appealed only pursuant to Supreme Court Rule 308 because count IV of the complaint is still pending before the trial court and the time for a Rule 308 appeal had long expired before the notice of appeal now before us was filed. Defendant cites *Leib v. Toulin, Inc.* (1983), 113 Ill. App. 3d 707, 447 N.E.2d 900.

Defendant argues that this court is without jurisdiction to consider the order of the trial court that denied plaintiffs' motion for recusal of the Wham firm as defendant attorneys. That argument is well taken. The order denying recusal was a record sheet entry of May 2, 1985. In its entirety it stated: "Briefs regarding Motion to recuse considered. Motion is denied. Clerk to send copy of docket entry to attys of record." No further pleadings were filed or further proceedings had with regard to that order until plaintiffs filed their brief in this appeal. This appeal, as we have stated, is from a judgment of dismissal as to three counts of a four-count complaint wherein the trial court, acting *sua sponte*, made the requisite findings to invoke the appeal provisions of Supreme Court Rule 304(a). The judgment before us nowhere mentions the order denying recusal, and plaintiffs' notice of appeal likewise makes no reference to it. Accordingly, the matter of recusal of the firm of Wham & Wham is not before us.

Rule 304(a), of course, is applicable only to a final trial court disposition as to some of the parties or some of the issues of a case, whether that final disposition be termed a final order or a judgment. There is room to doubt that the "order" in the recusal matter is a final one. Although brevity does not necessarily speak to finality, the order does nothing more than deny plaintiffs' motion. An order in such form apparently leaves open the possibility for further litigation of the particular issue by the filing of an amended complaint. (*Cf. Lakatos v. Prudence Mutual Casualty Co.* (1969), 113 Ill. App. 2d 310, 252 N.E.2d 123.) On the other hand, the order recites that the

parties had filed briefs, an indication that the parties and the court regarded the issue as being ripe for final determination. By utilizing the rule of *Peach v. Peach* (1966), 73 Ill. App. 2d 72, 218 N.E.2d 504 (a question of the finality of an order may sometimes be resolved by a consideration of the substance, as distinguished from the form, of the order) it could possibly be determined that the order was in fact final.

We are also aware of the rule that an appeal from a judgment draws into question all prior, nonfinal orders and rulings that produced the judgment. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380.) However, it cannot be seriously contended that the order denying recusal bore any relation to the judgment before us or played any part in its rendering. The defendant cites the case of *Leib v. Toulin, Inc.* (1983), 113 Ill. App. 3d 707, 720-21, 447 N.E.2d 900, 909, where it is stated:

> "The refusal to disqualify an attorney is not a final order nor does any supreme court rule authorize an appeal from an interlocutory order of that nature."

We cannot agree with the court in *Lieb* that an order refusing to disqualify an attorney is not a final one, at least when it is an interim order that precedes the final determination of a case. We regard an order disqualifying, or refusing to disqualify, an attorney as being similar in nature and import to an order of contempt. In *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 429 N.E.2d 483, the supreme court discussed the appealability of an order finding a witness to be in contempt. The court noted that such an order was not a final one that would permit an appeal pursuant to Rule 304(a), nor would appeal as from an interlocutory order pursuant to Rules 306, 307, or 308 be possible. Nevertheless, a contempt order is appealable before the final determination of the case in which the contempt arose.

> "Preliminary orders in a pending case are not appealable because they are reviewable on appeal from the final order. (*Durkin v. Hey* (1941), 376 Ill. 292, 297.) However, an order cast in terms of a contempt proceeding imposing sanctions is a final and appealable order and has been held to be an appropriate method for testing pretrial discovery orders. (*People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 189; *Stimpert v. Abdnour* (1962), 24 Ill. 2d 26, 27; *People v. Williams* (1981), 87 Ill. 2d 161; *People ex rel. Hawthorne v. Hamilton* (1973), 9 Ill. App. 3d 551, 553; *Kemeny v. Skorch* (1959), 22 Ill. App. 2d 160, 163.) The imposition of a sanction

for contempt is final and appealable because, although occurring within the context of another proceeding and thus having the appearance of being interlocutory, it is an original special proceeding, collateral to and independent of, the case in which the contempt arises. (*Hill v. Jeffery Co.* (1920) 292 Ill. 490, 493; *Lester v. Berkowitz* (1888), 125 Ill. 307, 308.) It is the end of the proceeding begun against the witness. There is nothing left to be done but enforce the judgment." *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 171-72, 429 N.E.2d 483, 485-86.

Insofar as appealability is concerned, we find that the order in this case refusing to recuse attorneys to be similar to an order for contempt and final upon the recusal issue. Accordingly, since no appeal was taken within 30 days of the entry of the May 2, 1985, order refusing recusal, it cannot now be considered. Any consideration of the order denying recusal must be, if at all, upon an appeal pursuant to Supreme Court Rule 301 (87 Ill. 2d R. 301) as held in *People ex rel. Scott v. Silverstein*.

We would pause here to note that even if we were to consider the order refusing to recuse the Wham firm on its merits, we would affirm. Plaintiffs concede that Canons 4, 5, 7, and 9 do not address the issue they raise in express terms. We are mindful that the rule that prohibits an attorney from representing conflicting interests of a client is a strict one. As the supreme court stated in *In re Williams* (1974), 57 Ill. 2d 63, 66, 309 N.E.2d 579, 580-81:

"Clearly, an attorney violates Canon 6 when he uses confidential information against a former client. However, the proscription of Canon 6 does not extend only to that type of manifest disloyalty. The scope of an attorney's duty of loyalty to his clients was described in *People v. Gerold* [(1914)], 265 Ill. 448, 477, where the court stated: 'The rule has long been firmly established that an attorney cannot represent conflicting interests or undertake to discharge inconsistent duties. When he has once been retained and received the confidence of a client he cannot enter the service of those whose interests are adverse to that of his client or take employment in matters so closely related to those of his client or former client as in effect to be a part thereof.' "

The general rule has been followed without deviation in a number of Illinois cases, *e.g.*, *People v. Lackey* (1980), 79 Ill. 2d 466, 405 N.E.2d 748; *In re LaPinska* (1978), 72 Ill. 2d 461, 381 N.E.2d 700; *People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67; *Scheffki v.*

*Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (1971), 1 Ill. App. 3d 557, 274 N.E.2d 631. However, a statement of the general rule on attorney conflict does not serve to answer the issue raised by plaintiffs because in this case the subject matter of the two cases allegedly giving rise to the conflict are widely divergent. This fact brings into play a firm adjunct of the attorney-conflict rule, which is that, to be disqualifying, a conflict must be with regard to the same general matter. We find no Illinois case considering the issue where the conflict of an attorney is alleged to have arisen from entirely separate or disassociated matters. The seminal case of *People v. Gerold* (1914), 265 Ill. 448, 478-80, 107 N.E. 165, 177-78 (a case involving a conflict arising out of the same general matter) makes allusion to the requirement that a disqualifying conflict must be with regard to the same general matter when it stated:

> "It is the glory of the legal profession that its fidelity to its clients can be depended upon; that a man may safely go to a lawyer and converse with him upon his rights in litigation with absolute assurance that the lawyer's tongue is tied from ever discussing it. (*United States v. Costen*, 38 Fed. Rep. 24.) This rule has been so strictly enforced that it has been held that an attorney, on terminating his employment, cannot thereafter act as counsel against his client in the same general matter, even though while acting for his former client he acquired no knowledge which could operate to the client's disadvantage in the subsequent adverse employment.
>
>         \* \* \*
>
> Considering only the affidavit and testimony of attorney Webb himself, the conclusion is inevitable that he was employed by Gerold in a matter that was very closely interwoven with and related to the same subject matter that formed a basis for this prosecution, if, indeed, it was not the same identical matter, and that this rule must be invoked against his employment in this cause."

The same theme was reiterated in the case of *People v. Coslett* (1977), 67 Ill. 2d 127, 132-33, 364 N.E.2d 67, 70, where in discussing the issue the court stated: "The termination of the attorney's employment by the client does not affect the application of this rule regarding the general subject matter as to which the attorney has been retained."

A succinct statement of the general rule that, to be of sufficient magnitude to be disqualifying, a conflict of interest by an attorney must be with regard to the same general subject matter is found in

*Freeman v. Chicago Musical Instrument Co.* (7th Cir. 1982), 689
F.2d 715, 722:

> "If the subject matter of the former representation is not sub-
> stantially related to the subject matter of the present repre-
> sentation, obviously no ethical problem exists. See *Uniweld*
> *Products, Inc. v. Union Carbide Corp.*, 385 F.2d 992, 994-95
> (5th Cir. 1967), *cert. denied,* 390 U.S. 921, 88 S. Ct. 853, 19
> L. Ed. 2d 980 (1968)."

Also see 7A C.J.S. *Attorney and Client* sec. 150 (1980).

In this case there can be no question that the conflict faced by
the Wham firm was innocently and unknowingly incurred and was
not with regard to the same general subject matter. No confidences
or information were acquired in the partition suit representation of
Doy Meador that would in any way touch upon the instant case. At
the time this case was commenced against the city of Salem, the
Wham firm was representing it in an unrelated case then pending in
Effingham County and had represented it on other occasions in
other lawsuits. There was nothing whatsoever improper in the with-
drawal of Wham & Wham from the Doy Meador partition case when
it became known to the members of the firm that they were attor-
neys for Doy Meador at the same time that they accepted employ-
ment by another client, the city of Salem, that was being sued by
Doy Meador through the services of another attorney. When the
Wham firm promptly withdrew as Meador's attorney in the partition
case upon disclosure of the dual representation in the unrelated mat-
ters, any suggestion of impropriety was thereby satisfactorily re-
solved.

■ On the appeal of the judgment of dismissal, the plaintiffs
contend that the trial court erred in dismissing counts I, II, and III
of their complaint upon the basis of the Tort Immunity Act. That
Act, they contend, is inapplicable because counts I, II, and III are
not based in tort "as contemplated by the Act." The Act, plaintiffs
argue, refers to "physical-type or classic tort injury" and should not
be interpreted so as to apply to their claims that are based on nui-
sance, water pollution, and the interference with drainage. The fact
that the Tort Immunity Act requires that the notice of injury re-
quired by section 8—102 calls for a claimant to furnish information
as to dates and locations of injuries and names of physicians and
hospitals indicates the inapplicability to this case. Plaintiffs cite
cases that have involved claims that arose in tort-related actions
that have held the Tort Immunity Act inapplicable, *Luker v. Nelson*
(N. D. Ill. 1972), 341 F. Supp. 111 (Act inapplicable in civil rights

actions) and *Klein v. Springborn* (N. D. Ill. 1971), 327 F. Supp. 1289 (false imprisonment). The plaintiffs also argue that the trial court was too narrow in its application of the waiver-by-insurance rule when it restricted the consequence of the admission regarding insurance to count IV. The plaintiffs point to a statement by the city attorney for defendant that "99.9 percent of the case is being defended by attorneys hired by their (defendant's) liability insurance carrier." Additionally, plaintiffs point to the ongoing nature of defendant's acts for which they seek for both damages and injunctive relief. They reason that the limitation provision of section 8—101 and the notice provision of section 8—102 are inapplicable even if the insurance waiver is not involved. In any event, injunctive relief would not be barred by the Tort Immunity Act.

For its part, defendant continues to assert that the limitations and notice requirements in the Tort Immunity Act serve as a bar to plaintiffs' action. They add the arguments that plaintiffs should not be permitted to argue that they were denied leave to file an amended complaint when the trial court made the findings pursuant to Supreme Court Rule 304(a), *sua sponte*, because they elected to stand on their complaint rather than to file a motion to vacate within 30 days of judgment and ask leave to file an amended complaint. Such action on plaintiffs' part, defendant says, renders moot any of plaintiffs' arguments regarding an amendment of their complaint.

Upon consideration of the merits of the appeal, we conclude that the litigation of the issues tendered by plaintiffs' complaint was concluded prematurely by the trial court.

Admittedly, plaintiffs' complaint is imprecise and general in many respects. Nevertheless, it does not appear at this stage that plaintiffs could never file a complaint that would state a good cause of action as to the three counts that were dismissed. Since the defendant is a municipal corporation, the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. (1977), ch. 85, par. 1—101 *et seq.*) will undoubtedly play a role in the ultimate determination of the liability. If the Act is applicable, was notice of the action required, was it given, or was it waived? If the Act is applicable and the required notice of suit was not given, would it nevertheless proscribe the plaintiffs' request for an injunction? Would the Act apply where the damages claimed did not arise from an "injury" but, rather, resulted from activities of defendant that constituted a common law nuisance or trespass? These questions, and more, are raised by the case before us. No satisfactory

answer to any of these questions was given by the trial court's dismissal of the three counts of the complaint that was, *sua sponte*, made final in form. While we readily agree with the trial court that the complaint was deficient in stating a cause of action in each of the three counts, we cannot agree that plaintiffs should have been precluded from filing an amended complaint in order to attempt to state a proper cause of action. There has been no discovery and, with a final dismissal, there can be none. While it may be true, as the trial court found, that the three dismissed counts, although ostensibly couched in terms of common law nuisance and trespass, sounded in tort, it may also be true that the defendant had purchased liability insurance that would constitute a waiver of the immunity afforded by the Act as provided in its section 9—103(c). There is some indication in the record that the defendant may indeed have such insurance as would constitute a waiver of the defense of the Act as to all counts of the complaint. Defendant admitted insurance as to the acts alleged in count IV. Furthermore, the city attorney of defendant, one of its counsel of record in this case, stated to the court that the Wham firm was "furnishing 99.9 per cent of the defense of the case." Certainly, discovery as to the nature and extent of coverage of defendant's liability insurance policy is warranted before the issue of waiver-by-insurance is finally foreclosed.

■ Counts I and III of the complaint contained a prayer for injunctive relief. In count I this was combined with a prayer for damages. As the trial court pointed out, although that may not have been good pleading because of multiplicity, it would not be fatal. The pleading problem aside, the propriety of the trial court's dismissal of those counts is open to serious question for, as expressly held in *Anderson v. Sutter* (1983), 119 Ill. App. 3d 1070, 458 N.E.2d 39, the notice requirements of section 8—102 of the Tort Immunity Act do not apply to a suit for injunctive relief because an injunction is relief other than damages.

■ Section 8—102 of the Tort Immunity Act is a statute of limitations that provides that any action against a local governmental entity for any injury must be commenced within two years of the injury. Questions regarding the applicability of this section were raised when the complaint alleged that damages resulted from activity "since 1977." Plaintiffs argue that the complaint shows that the complained-of activity is ongoing and, accordingly, the two-year limitation is not a bar. If the activity is in fact ongoing, the limitations period begins to run from the date of the last injury or the date

when the tortious acts cease. (*Anderson v. Sutter* (1983), 119 Ill. App. 3d 1070, 458 N.E.2d 39.) Furthermore, the filing of a complaint within the notice period prescribed by section 8—102 satisfies the notice requirement. (*Rio v. Edward Hospital* (1984), 104 Ill. 2d 354, 472 N.E.2d 421.) If the acts of defendant were in fact ongoing, the filing of the complaint would at some point constitute the notice required by section 8—102. A more particular statement with regard to dates could doubtless be made in an amended complaint.

■ Further discussion of any supposed issues is unwarranted. Our expression to this point has been merely to illustrate our determination that this case was not ready for final disposition at the time it was made. The making of the finding pursuant to Supreme Court Rule 304(a) that there is no just reason for delaying enforcement or appeal is a matter that lies within the discretion of the trial court. It is the trial court that must direct and control the litigation or prejudice to a full determination of the issues in the case. While the appellate court cannot make the Rule 304(a) finding on its own for the trial court, even pursuant to Supreme Court Rule 366(a)(5) (87 Ill. 2d R. 366(a)(5)) (*Ariola v. Nigro* (1958), 13 Ill. 2d 200, 148 N.E.2d 787), the trial court's decision on whether to make or withhold the Rule 304(a) finding will be reversed if it can be said that in deciding as it did the court committed an abuse of discretion. (*Jones v. Searle Laboratories* (1983), 93 Ill. 2d 366, 444 N.E.2d 157; *Whitney v. Madden* (1948), 400 Ill. 185, 79 N.E.2d 593; *Black Hawk Motor Transit Co. v. Illinois Commerce Commission* (1943), 383 Ill. 57, 48 N.E.2d 341.) In the instance of this case, and for the reasons assigned above, we have determined that the trial court committed an abuse of its discretion when it entered a judgment dismissing counts I, II, and III of plaintiffs' complaint and then made the Rule 304(a) finding that compelled an immediate appeal. Justice and fairness require that plaintiffs be given an opportunity to file an amended complaint and to pursue discovery for the disclosure of information that could be essential to their cause of action.

For the foregoing reasons, we reverse and remand for further proceedings.

Reversed and remanded.

KASSERMAN and HARRISON, JJ., concur.