Neal L. WOLF, executor of the Estate
of Ira Wolf, Plaintiff,

v.

The CITY OF CHICAGO HEIGHTS,
etc., et al., Defendants.

No. 92 CV 8317.

United States District Court,
N.D. Illinois, E.D.

June 16, 1993.

Joseph J. Duffy, Kevin D. Evans, Daniel Thomas Graham, Francine Norz Tobin, Schiff, Hardin & Waite, Chicago, IL, for Neal L. Wolf.

Anthony Gael Scariano, Scariano, Kula, Ellch & Himes, Chtd., Chicago, IL, David P. Kula, Raymond A. Hauser, Todd Kenneth Hayden, Scariano, Kula, Ellch & Himes Chtd., Chicago Heights, IL, for City of Chicago Heights, Philip Russo, Jerlando Melei, Jack Cripe and John Hogensen.

James B. Koch, Chicago, IL, John L. Hines, Jr., Gardiner, Koch & Hines, Chicago, IL, for Charles Panici and Enrico J. Doggett.

### MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Neal Wolf (Wolf), as executor of his father's estate, has accused the City of Chicago Heights (Chicago Heights) and six of its employees of violating several federal fair housing and civil rights laws, as well as several state laws, by ordering the demolition of his late father's apartment building (the property).[1] Defendants now move to dismiss. Their motion is granted in part and denied in part.

### BACKGROUND

Defendants Charles Panici (Panici), Enrico Doggett (Doggett), Philip Russo (Russo), Jerlando Melei (Melei), Jack Cripe (Cripe), and John Hogensen (Hogensen) were all government officials employed by defendant Chicago Heights during the late 1980s and early 1990s, when the events at issue took place. Panici served as mayor, Doggett as city administrator, Russo as superintendent of the building department, Melei as a housing code officer, and Cripe and Hogensen as building inspectors.

---

1. For the sake of simplicity, this opinion refers to the property as plaintiff's father's. The actual legal status of the building was more complicated. In 1961 the building was placed in a trust. Plaintiff's father was the sole beneficiary of the trust when he died in 1989.

Most of plaintiff's complaint repeats allegations that were made public during a trial held last year involving a number of the defendants in this case. According to the complaint, during the 1980s defendants came to believe that too many African–Americans and Mexicans were moving into the west side of Chicago Heights, a historically white neighborhood where the Wolf property was located. In 1984 defendants allegedly devised a scheme to exclude African–Americans and Mexicans from the area. Panici obtained a list of all recipients of Section 8 housing subsidies in Chicago Heights (the majority of whom were African–American) and pinpointed buildings where many of them lived. Defendants allegedly falsified inspection reports concerning several of those buildings and declared them uninhabitable. They then ordered the tenants who lived in them to leave. They also allegedly paid certain individuals—who were not on the city payroll—to vandalize, steal from, and set fire to several of the buildings.

Wolf alleges that defendants followed a similar course with respect to his father's building. In 1990, he says, they conspired among themselves and "with others unknown" to solicit and encourage acts of vandalism at and theft from the property. On December 24, 1990, they declared the property uninhabitable and ordered the tenants to vacate. However, they continued to solicit conduct against the property into 1991. The property ultimately was demolished in 1992. Plaintiff claims that defendants' actions violated 42 U.S.C. §§ 1981, 1982, 1983 and 1985, and the Fair Housing Act, § 3604 *et seq.*, as well as several common law principles recognized under Illinois law. Defendant Chicago Heights has filed a counterclaim against Wolf, alleging violations of 42 U.S.C. § 3601 *et seq.*, on the theory that Wolf's father's failure to maintain the property in conformity with the housing code had an adverse impact on African–American tenants.

## DISCUSSION

### Statute of Limitations

■ Plaintiff brings federal claims under §§ 1981, 1982, 1983 and 1985, none of which contains an explicit statute of limitations, and

under the Fair Housing Act, which contains an express two-year limitations period, 42 U.S.C. § 3613(a)(1)(A). The Supreme Court has indicated that the applicable statute of limitations for the former claims is the statute of limitations imposed on the most analogous state law claim. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 661, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987); *Wilson v. Garcia,* 471 U.S. 261, 266–68, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). The Court has regarded claims brought under §§ 1981 and 1983 as the equivalent of personal injury claims, *Goodman,* 482 U.S. at 661, 107 S.Ct. at 2621 (§ 1981); *Wilson,* 471 U.S. at 276, 105 S.Ct. at 1947 (§ 1983), and because the statute of limitations on personal injury claims in Illinois is two years, 735 ILCS 5/13–202, federal courts sitting in Illinois have applied a two-year statute of limitations to §§ 1981 and 1983 claims. *See e.g., Smith v. City of Chicago Heights,* 951 F.2d 834, 836–7 n. 1 (7th Cir.1992) (§ 1981); *Kalimara v. Illinois Dept. of Corrections,* 879 F.2d 276, 277 (7th Cir.1989) (§ 1983). This court also has applied the two-year limitations period to claims brought under § 1985, *Kness v. Grimm,* 761 F.Supp. 513, 519 (N.D.Ill.1990), and it believes that the general personal injury statute of limitations applies to § 1982 as well. Defendants suggest that the presence of a municipal defendant requires the application of the one-year limitations period found in the Illinois Tort Immunity Act, 745 ILCS 10/8–101, but their proposal is foreclosed by the Supreme Court's admonition in *Goodman* to apply a single limitations period to all claims brought under § 1983. *Goodman* stressed the value of uniformity, and this court's holding that §§ 1981, 1982, 1983 and 1985 share the same statute of limitations—regardless of the status of the defendant—respects the logic of the *Goodman* decision.

■ Wolf filed his complaint on December 23, 1992. He alleges a prolonged effort to discriminate against African–Americans and Mexicans by preventing them from living in his father's building. That effort allegedly began in 1990, more than two years before plaintiff filed a complaint, but it allegedly continued into 1991, less than two years be-

fore the complaint was filed. Defendant's actions culminated with the demolition of the property in 1992, less than one year before the complaint was filed.

■ Defendants argue that plaintiff's cause of action matured as soon as the property was declared uninhabitable on December 24, 1990 (or, if not on that date, then sometime in 1990 when defendant Melei retired). Defendants' statute of limitations attack falters for several reasons. First, the December 24, 1990 declaration of the property's non-inhabitability occurred within the two-year limitations period. Second, plaintiff contends that defendants continued to violate his civil rights for more than a year after the city issued its initial notice of the property's non-inhabitability. The city issued a second notice of non-inhabitability on January 7, 1991, and plaintiff asserts that defendants continued to solicit vandals and thieves to prey on the apartment building during that year. According to Wolf, the December 24, 1990 declaration of the property's non-inhabitability marked not the culmination of defendants' endeavors but an early step in an extended effort. When a continuing civil rights violation is alleged, as in this case, the claim is not barred by the statute of limitations unless none of the allegedly illegal acts occurred within the applicable limitations period. *See Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1310 (7th Cir.1989). Wolf claims that defendants committed many illegal acts within two years of his filing of the complaint, and he alleges that the ultimate objective of defendants' plan—to demolish his father's building—was achieved less than one year before he filed his complaint. Finally, the court would note that the statute of limitations began to run only when Wolf knew or reasonably should have known of the facts supporting his discrimination charge. *Kuemmerlein v. Board of Education of Madison Metropolitan School Dist.,* 894 F.2d 257, 261 (7th Cir.1990). Defendants never stated publicly that they were trying to exclude African–Americans and Mexicans from the area where the property was located, or that they were conspiring to demolish the Wolf property, and there is no suggestion that plaintiff knew or should have known about defendants' alleged scheme prior to the 1992 trial from which plaintiff's complaint extensively quotes.

■ The foregoing analysis requires some elaboration with respect to the liability of defendant Melei, who retired from his job with the city on some unspecified date in 1990. At the outset, the court should state that it rejects defendants' argument that Wolf's claims against the city, Panici, Doggett, Russo, Cripe and Hogensen should be dismissed if the court dismisses the claims against Melei. Defendants' position seems to reflect wishful thinking on their part more than a logical analysis of the complaint or the principles underlying the Rules of Civil Procedure. Individual claims are severable; one deficient allegation will not doom an entire complaint.

■ In any event, the claims against Melei need not be dismissed on statute of limitations grounds. Even if the statute of limitations had begun to run at the time defendants committed their allegedly illegal acts, as defendants assert, there would be no reason to dismiss the § 1985 conspiracy claim against Melei because a conspirator who participates in a scheme designed to last for many years is regarded as a participant in the scheme throughout its duration, unless he or she affirmatively withdraws. Thus, in *United States v. Masters,* 924 F.2d 1362, 1368 (7th Cir.1991), *cert. den.* —— U.S. ——, 112 S.Ct. 86, 116 L.Ed.2d 58 (1991), the Seventh Circuit held that a conspirator whose last conspiratorial act occurred six years prior to the bringing of charges could be held liable for a conspiracy, notwithstanding an applicable five-year statute of limitations, because the conspiracy was still in force less than five years before the indictment. Defendants suggest that Melei's retirement amounted to withdrawal. Perhaps it did, but that is a question of fact and has no bearing on a motion to dismiss for failure to state a claim.

■ Moreover, Melei's 1990 retirement does not require dismissal of any of the other claims against him, even though his allegedly illegal acts may have occurred more than two years before Wolf filed his complaint. According to the complaint defendants' plan

524

was devised and executed secretly. There is no reason to believe that Wolf should have known about Melei's acts any earlier than he should have known about the acts of the other defendants, and the statute of limitations began to run when Wolf knew or reasonably should have known about defendants' acts, not when those acts occurred.

■■■ Plaintiff concedes that the one-year limitations period found in the Illinois Tort Immunity Act governs his state law claims. Under the preceding analysis, however, the shorter limitations period makes no difference. When a continuing violation is alleged, the rule in Illinois is that the statute of limitations begins to run from the date of the last injury or tortious act. *Leckrone v. City of Salem*, 152 Ill.App.3d 126, 105 Ill.Dec. 87, 95, 503 N.E.2d 1093, 1101 (1987); *Anderson v. Sutter*, 119 Ill.App.3d 1070, 75 Ill.Dec. 871, 458 N.E.2d 39, 44 (1983). Plaintiff has alleged a continuing violation that extended into 1992, less than one year before the complaint was filed. Therefore, the court concludes that all of the claims contained within the complaint were brought within the applicable limitations periods against all of the defendants.

### *Conspiracy*

■■■ Defendants observe that a claim of conspiracy cannot be supported by proof that the agents of a municipality conspired among themselves. *See Cromley v. Board of Education of Lockport Township High School Dist. No. 205*, 699 F.Supp. 1283, 1291–92 (N.D.Ill.1988). Defendants' statement of the law is correct, but its application of that law to this case is erroneous. Wolf alleges that municipal officers conspired among themselves and "with others unknown" to solicit and encourage acts of vandalism at and theft from the property as part of a scheme to exclude African–Americans and Mexicans from the neighborhood where the Wolf property was located. The conspirators allegedly include persons who were not agents of Chicago Heights. Wolf's allegations are sufficient to make out a claim for conspiracy under § 1985.

### *Pleading with Particularity*

■■ Plaintiff has made one claim—a fraudulent conspiracy claim contained in count XI—that is subject to a heightened pleading standard under Fed.R.Civ.P. 9. The claims contained in counts I through X are subject to the notice pleading requirements of Fed.R.Civ.P. 8. The court concludes that all of the claims other than the fraudulent conspiracy claim have been pled in sufficient detail.

Rule 8 requires only a "short and plain statement of the claim." Plaintiff has provided that for every claim. Under *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985), the Seventh Circuit used to impose a heightened pleading standard on plaintiffs making constitutional claims against municipalities, but, as this court observed in *Hammond v. Town of Cicero*, 822 F.Supp. 512 (N.D.Ill.1993), that practice is now precluded by the Supreme Court's decision in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Under Rule 9(b), however, all averments of fraud must be "stated with particularity." Plaintiff insists that the fraudulent conspiracy claim is a conspiracy claim that happens to involve fraud, not a fraud claim that happens to involve conspiracy, and that it is therefore not subject to the elevated standard of Rule 9. But plaintiff's grammatical analysis overlooks the purpose of Rule 9(b), which is to ensure that defendants have been given sufficient notice of the claims against them to allow them to prepare a defense. Plaintiff's complaint alleges that defendants conspired to commit a fraud, but it offers no information concerning the manner in which the fraud was to be committed, when it was to be committed, who was supposed to commit it, or what its objectives were supposed to be. Accordingly, defendants' motion to dismiss is denied with respect to counts I through X, but is granted with respect to count XI.

### CONCLUSION

For the reasons stated herein, defendants' motion to dismiss is granted in part and denied in part.