**Xadrian McCRAVEN, Plaintiff,**

**v.**

**THE CITY OF CHICAGO, a Municipal corporation, the City of Chicago Department of Police, Glenn E. Carr, John F. Harris, Thomas Sadler, Valerie C. Rodgers, and Raymond Johnson, Defendants.**

No. 97 C 8845.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 19, 1998.

---

Steven A. Adatto, Kusper & Raucci, Chartered, Chicago, IL, for Xadrian McCraven.

Mary Leone Smith, Brian L. Crowe, Tracey Renee Ladner, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, Derrick Matthew Kedziora, City of Chicago Corp. Counsel's Office, Chicago, IL, for Thomas Sadler, Valerie C. Rodgers and Raymond Johnson.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Xadrian McCraven filed a six count complaint against the defendants arising from the denial of his application to become a police officer with the Chicago Police Department ("CPD"). He alleges race discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, civil rights violations under 42 U.S.C. §§ 1981, 1983, and 1985(3), and state law claims for wrongful use of expunged arrest records, 775 ILCS 5/2–103, and for fraud, deceit, and misrepresentation. The defendants move to dismiss all counts of Mr. McCraven's complaint. For the reasons set forth below, the defendants' motion is granted in part and denied in part.

### Background

According to the complaint, the CPD's hiring process consists of several steps and the disqualification from any one step results in the removal of a candidate from further consideration for employment. The first stage is a written exam. If an applicant passes, the CPD administers psychological assessments, performs drug screenings, and conducts a background investigation. Mr. McCraven alleges that all the individual defendants were responsible for establishing or implementing the recruitment, examination, and hiring procedures for the CPD.[1]

Mr. McCraven states that he is African American, has a college degree, and possesses all the necessary prerequisites to become a police officer. He claims that he initially applied for a job as a police officer prior to 1991 and was specifically informed that his arrest record was the reason he was ineligible for the position. In June 1991, he states he submitted another application to the CPD (the "1991 application"). During that process, he was allegedly notified that he failed the psychological examination and his candidacy was terminated. In 1992, he says he was notified that he could retake the psychological examination as part of a settlement regarding bias within the examination and

that he took the examination again and passed in early 1993. Also in 1992, Mr. McCraven alleges that he filed a motion to expunge his arrest records and that an order expunging the records was entered on December 30, 1992.

In October 1993, Mr. McCraven says he again applied to become a police officer with the CPD (the "1993 application") and took the written examination later that year. The CPD then allegedly assigned Detective Johnson to conduct the background investigation on his 1991 application. To prepare the background investigation report, Detective Johnson allegedly obtained a copy of Mr. McCraven's "rap sheet" with the expungement order attached. Mr. McCraven claims that Detective Johnson contacted different units within the CPD and questioned specific officers regarding his expunged arrests and reviewed individual case reports from the units regarding those arrests. In the background investigation report dated September 15, 1994, Mr. McCraven states that Detective Johnson included information on his expunged arrests. In October, 1994, Detective Johnson allegedly told Mr. McCraven that he would not recommend Mr. McCraven for a position because of his arrest record. Mr. McCraven contends that he told Detective Johnson that his arrests were expunged and that he continued with the application process despite Detective Johnson's statements. Nevertheless, Detective Johnson allegedly continued to investigate the expunged arrests and added two addendums to the investigation report on November 1 and 28, 1994, which included additional information on those arrests.

Mr. McCraven states that on April 30, 1995, the CPD formally assigned Detective Rodgers to conduct the background investigation on Mr. McCraven's 1993 application. Detective Rodgers allegedly considered Mr. McCraven's expunged arrest record and other arrest information and prepared a preliminary background report dated May 23, 1995. Soon thereafter, Mr. McCraven claims that

---

1. The individual defendants are: Valerie Rodgers and Raymond Johnson, both detectives with the CPD, Thomas Sadler, the Director of Personnel at the CPD, John Harris, the Deputy Superinten-

dent of the Bureau of Administrative Services with the CPD, and Glenn Carr, the Commissioner of the Department of Personnel of the CPD.

the investigation was reassigned to Detective Johnson and that Detective Johnson further investigated his expunged arrests and added another addendum dated December 13, 1995 to the investigation report which included information on those arrests. Detective Johnson then allegedly told Mr. McCraven that he would not be hired based on his 1993 application because of his arrest record.

Mr. Sadler, Mr. Harris, and Mr. Carr allegedly encouraged and ratified the detectives' use of expunged arrest records and other arrest information during the background investigation. On December 19, 1995, Mr. McCraven states that Mr. Harris recommended to Mr. Carr that Mr. McCraven be removed from the eligibility list due to the background investigation. On March 18, 1996, Mr. McCraven says that Mr. Carr informed him that he was disqualified for a police position.

Mr. McCraven filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right to sue letter on September 30, 1997. Mr. McCraven filed this action on December 22, 1997.

### Motion to Dismiss

As an initial matter, the CPD is not a proper defendant to this action. As a subdivision of the City of Chicago (the "City"), the CPD has no separate independent legal existence apart from the City. *Chan v. City of Chicago*, 777 F.Supp. 1437, 1442 (N.D.Ill.1991). The City is liable for any discriminatory or other unlawful acts committed by the CPD. Therefore, I will strike the CPD as a defendant and substitute the City for the CPD, the City being the proper defendant and a named defendant in this suit.[2]

2. The City, as a municipality, is immune from punitive damages unless immunity has been waived. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Kolar v. County of Sangamon,* 756 F.2d 564, 567 (7th Cir.1985). Illinois has not waived immunity for its local governments. 745 ILCS 10/2-102. Therefore, the request for punitive damages against the City is stricken.

### A. Title VII and Section 1981

Mr. McCraven claims that the CPD discriminated against him on the basis of his race in violation of Title VII and § 1981 when it refused to hire him as a police officer because of his expunged arrest records and related information. The City contends that Mr. McCraven has failed to state claims for disparate treatment on the basis of race under both Title VII and § 1981. *See Bratton v. Roadway Package Sys., Inc.,* 77 F.3d 168, 176 (7th Cir.1996) (stating that § 1981 claims should be analyzed in the same manner as claims brought pursuant to Title VII). It argues that under the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) burden-shifting method of proof, Mr. McCraven has not established his *prima facie* case because he failed to allege that the City treated similarly situated whites more favorably.

Mr. McCraven, however, is not required to allege in his complaint that the City treated similarly situated whites more favorably in a failure to hire case. Rather, a plaintiff must allege that (1) he is a member of a protected class, (2) that he applied and was qualified for a position for which the employer was seeking applicants, (3) that despite his qualifications, he was not hired, and (4) that after his rejection, the position remained open and the employer continued to seek applications from persons with his qualifications. *Ost v. West Suburban Travelers Limousine, Inc.,* 88 F.3d 435, 440 (7th Cir.1996). Mr. McCraven stated that he was African American, that he applied for and was qualified for the available position of police officer at the CPD, that despite his qualifications he was not hired, and that the position remained open and the CPD continued to seek other applicants with his qualifications for the position of police officer after he was rejected. This is sufficient to state a claim of disparate treatment.[3]

3. The claims would also not be dismissed on the ground that Mr. McCraven sufficiently alleged a disparate impact theory of race discrimination which the City did not address. *See Vitug v. Multistate Tax Comm'n,* 88 F.3d 506, 513-14 (7th Cir.1996) (discussing disparate impact under Title VII). He alleged that there is a higher percentage of African Americans with arrest records than there is of non-African Americans and that

## B. Illinois Human Rights Act

Mr. McCraven alleges that the CPD violated the Illinois Human Rights Act ("IHRA") when it used his expunged arrest records in determining whether he was qualified as a police officer. The IHRA provides that it is unlawful for an employer "to inquire into or to use the fact of an arrest or criminal history record information ordered expunged, sealed or impounded ... as a basis to refuse to hire, to segregate, or to act with respect to recruitment, hiring,...." 775 ILCS 5/2–103. Under Illinois law, the Illinois Human Rights Commission ("IHRC") has exclusive authority over claims arising under the IHRA. *Talley v. Washington Inventory Serv.*, 37 F.3d 310, 311 (7th Cir.1994) (citing *Mein v. Masonite Corp.*, 109 Ill.2d 1, 7, 485 N.E.2d 312, 315, 92 Ill.Dec. 501, 504 (1985)). Judicial review may be obtained only after the IHRC issues a final order. *Id.* at 312–13. Since Mr. McCraven never brought his IHRA claim to the IHRC, this claims must be dismissed for failure to exhaust administrative remedies. *Id.* at 313.

Mr. McCraven argues that this court should assume jurisdiction over the IHRA claim since it is based on his constitutionally protected right to privacy. Mr. McCraven cannot add a claim for deprivation of his constitutional right to privacy in a response to a motion to dismiss. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985).

## C. Section 1983

Count III alleges a § 1983 claim against the individual defendants in their individual and official capacities.[4] The defendants move to dismiss the claim arguing that Mr. McCraven has failed to state an equal protection violation under § 1983 and that even if he has sufficiently alleged such a claim, it is untimely.

To bring a § 1983 claim, Mr. McCraven must establish that: (1) he held a constitutionally protected right; (2) he was deprived of this right in violation of the Constitution; (3) the defendants intentionally caused this deprivation; and (4) the defendants acted under color of state law. *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir.1993). Mr. McCraven claims that the individual defendants, acting pursuant to the hiring procedures established by the CPD, intentionally deprived him of his right to equal protection by refusing to hire him. He claims that the defendants established or implemented the CPD's hiring policy, which included examination of expunged arrests, with the intent and effect of discriminating against candidates because of their race and color. *See Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (equal protection standards require the plaintiff to show that the governmental action was motivated by a discriminatory purpose and had a discriminatory effect).

The defendants respond that Mr. McCraven cannot establish an equal protection claim because he failed to allege that African Americans were singled out for differential treatment because of their race. They contend that the CPD evaluated the arrest records of all persons, not just African American persons. Although "[g]eneral rules that apply evenhandedly to all persons" comply with the equal protection clause, "when a governmental unit adopts a rule that has a special impact on less than all the persons subject to its jurisdiction," it may have violated the equal protection clause. *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587–88, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979). In this case, the defendants allegedly adopted and/or implemented the arrest record rule, which has a special impact on African Americans because a higher percentage of them have arrest records, with the intent and ef-

---

the use of arrest records as a hiring criteria discriminates against African Americans because it disqualifies African Americans at a higher rate than non-African Americans.

4. A suit against a municipal official in his official capacity is equivalent to a suit against the municipality itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). It does not matter if Mr. McCraven chooses to name the officials in their official capacities rather than naming the City because in both cases the City is the defendant.

fect of discriminating against Mr. McCraven and other African Americans. This classification of applicants by arrest record, although ostensibly neutral, is allegedly pretext for racial discrimination. *See Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (stating that ostensibly neutral classifications may violate the equal protection clause if they were established with a discriminatory intent). This is sufficient to state a § 1983 equal protection claim.

■ In the alternative, the defendants contend that Mr. McCraven's § 1983 claim is barred by the applicable statute of limitations: Illinois' two-year statute of limitations for a personal injury tort action. *Kalimara v. Illinois Dep't of Corrections,* 879 F.2d 276, 277 (7th Cir.1989). The limitations period begins to run when the plaintiff knows or reasonably should have known of his alleged injury. *Cathedral of Joy Baptist Church v. Village of Hazel Crest,* 22 F.3d 713, 717 (7th Cir.), *cert. denied,* 513 U.S. 872, 115 S.Ct. 197, 130 L.Ed.2d 129 (1994).

■ Mr. McCraven filed his complaint on December 22, 1997. The defendants contend that the limitations period has run because all allegations pertaining to Detective Johnson, Detective Rodgers, and Mr. Harris relate to conduct that occurred prior to December 22, 1995. The defendants also argue that the limitations period has run with respect to claims against Mr. Carr because Mr. McCraven could have discovered his claim prior to December 22, 1995 through the exercise of reasonable diligence.

Mr. McCraven responds that his claim is not barred because the defendants' conduct constitutes a continuing violation. "[W]here the employer's decision-making process [relating to hiring] takes place over a period of time, making it difficult to determine the actual date of the allegedly discriminatory act[,] ... the statute of limitations begins running for the claim when the plaintiff knows that the decision has been made." *Jones v. Merchants Nat'l Bank & Trust Co.,* 42 F.3d 1054, 1058 (7th Cir.1994). In this case, there was a lengthy decision-making

process and it is unclear when the CPD made its decision not to hire Mr. McCraven. Mr. McCraven was officially informed of his disqualification from the CPD on March 18, 1996. Prior to that date, Mr. McCraven might have suspected, based on Detective Johnson's statements, that he would not be hired, but he did not know that the CPD had made its decision to deny his employment application. Thus, the statute of limitations did not begin to run until March 18, 1996. Mr. McCraven's § 1983 claim is not time barred.[5]

## D. *Section 1985(3)*

■ Count V alleges that the defendants conspired to impede and hinder Mr. McCraven's rights as guaranteed under the Constitution. To state a § 1985(3) conspiracy claim, a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Brotherhood of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). The principal element of a conspiracy is an agreement between the parties. *Kunik v. Racine County, Wis.,* 946 F.2d 1574, 1580 (7th Cir. 1991). To support the existence of an agreement, there must be factual allegations that the defendants had a meeting of the minds or the factual allegations must be sufficient to raise the inference of mutual understanding. *Id.*

■ The defendants contend that Mr. McCraven has not sufficiently alleged a conspiracy because he has failed to allege any facts which support the existence of an agreement or mutual understanding among the defendants. Count V makes the conclusory allegation that the defendants conspired to deprive Mr. McCraven of his constitutional rights and then incorporates the preceding

---

**5.** For the same reason, Mr. McCraven's § 1981 and § 1985 claims are not time-barred.

factual allegations. In the preceding allegations, Mr. McCraven alleges that Mr. Harris, Mr. Sadler, and Mr. Carr, supervisors at the CPD, developed the hiring policies for the CPD, which suggests some agreement or mutual understanding. They also specifically encouraged and ratified the use of expunged arrests to discriminate against Mr. McCraven because of his race. The persons they must have encouraged are Detectives Johnson and Rodgers. Detective Johnson allegedly zealously investigated Mr. McCraven's arrest record and added numerous addendums to the investigation report, suggesting that he agreed with his supervisors. These allegations are sufficient to establish that Mr. Harris, Mr. Sadler, Mr. Carr, and Detective Johnson reached a mutual understanding. On the other hand, the allegations against Detective Rodgers are insufficient. The complaint merely states that she was initially assigned to investigate Mr. McCraven's 1993 application, wrote one report, and then was taken off his application. There are no facts to indicate that she further investigated Mr. McCraven in agreement with the other defendants.

The defendants also contend that even if Mr. McCraven has sufficiently alleged a conspiracy under § 1985(3), the intracorporate immunity doctrine precludes the imposition of liability. This doctrine precludes liability against "managers of a corporation jointly pursuing its lawful business ... when acts within the scope of their employment are said to be discriminatory or retaliatory." *Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir.1990), *cert. denied*, 502 U.S. 812, 112 S.Ct. 60, 116 L.Ed.2d 36 (1991). This doctrine has been extended to apply to individual members of a single governmental entity. *Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir.1994).

There are two exceptions to the doctrine: (1) where the employees were motivated solely by personal bias, or (2) there were numerous acts undertaken by several corporate employees such that the discrimination permeated the ranks of the organization's employees. *Hartman v. Board of Trustees*, 4 F.3d 465, 470–71 (7th Cir.1993). In this case, Mr. McCraven alleged that Mr. Sadler, Mr. Harris, and Mr. Carr expressly encouraged and ratified the wrongful use of Mr. McCraven's expunged arrests and that Detective Johnson investigated those arrests specifically to discriminate against him because of his minority status. They treated him in this manner solely because of his race. This is sufficient to take this case outside the intracorporate immunity doctrine.

### E. Fraud, Misrepresentation, and Deceit

Mr. McCraven alleges that prior to 1991 he applied for a police officer position with the CPD and was rejected. He claims that the CPD, through its agents, informed him that his arrest record was the specific reason for his rejection. Relying on that information, Mr. McCraven had his arrest record expunged and then reapplied for the position. Despite his actions, the CPD again denied his application on March 18, 1996. Mr. McCraven claims that the CPD, through its agents and written materials, made material misrepresentations of fact by stating that he was denied a position because of his arrest record by stating that he would be judged on the basis of merit and ability, and that he would be fairly evaluated for employment. He further claims that the CPD, through its agents, concealed facts from him which it had an affirmative duty to disclose, specifically that the CPD would not provide Mr. McCraven with the opportunity to be evaluated on a nondiscriminatory basis for hiring and that his expunged arrest record would still result in the denial of his application.

Even assuming that Mr. McCraven sufficiently alleges a claim for fraud, deceit, and misrepresentation, his claim is barred by the statute of limitations. The Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/8–101, provides a one year statute of limitations for all civil actions against a municipality and its employees. Mr. McCraven was informed by Detective Johnson in October, 1994 and December, 1995 that he would not be hired because of his arrest record. On March 18, 1996, Mr. Carr told Mr. McCraven that he was officially disqualified for a police officer position. On that date, Mr. McCraven knew of his injury and should have filed suit within one

year. By waiting until December, 1997, this claim is too late.

 Mr. McCraven responds that his claim is timely because he has alleged a continuing violation and under that theory the statute of limitations only begins to run from the date of the last injury or tortious act. *See Wolf v. City of Chicago Heights,* 828 F.Supp. 520, 524 (N.D.Ill.1993) (stating that under Illinois law, when a continuing violation is alleged, the statute of limitations does not begin to run until the date of the last injury or tortious act). He states that the CPD's tortious act, the misrepresentation prior to 1991 that expunging his arrest record would allow him to qualify as a police officer, continues to injure him to this date and will continue to injure him until he is allowed to compete for a position equally with every other applicant without enduring the effects of his past arrest record. The problem with this argument is that to state a claim for fraudulent misrepresentation, Mr. McCraven must allege that he relied upon the truth of the CPD's statements.[6] Mr. McCraven may have relied on the CPD's misrepresentation when he applied in 1991 and 1993, but once he was disqualified in March, 1996 because of his arrest record, he knew that the CPD's previous statement about his arrest record was untrue. Mr. McCraven cannot claim any further reliance upon the CPD's statement after that date. Thus, there is no continuing injury resulting from reliance on the CPD's material misrepresentation that would extend the statute of limitations.

### Conclusion

The defendants' motion to dismiss the complaint is granted in part and denied in part. Counts II and VI are dismissed. Detective Rodgers is dismissed from Count V. The remaining counts may proceed as set forth above.

---

**6.** To state a claim for fraudulent misrepresentation in Illinois, a plaintiff must allege (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co.,* 174 Ill.2d 482, 496, 675 N.E.2d 584, 591, 221 Ill.Dec. 389, 396 (1996).