IDLEHOUR DEVELOPMENT COMPANY *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF ST. CHARLES *et al.*, Defendants-Appellees.

Second District   No. 79-614

Opinion filed September 3, 1980.

48

Charles J. O'Laughlin, Michael J. Rovell, and James A. McKenna, all of Jenner & Block, of Chicago, and Michael F. O'Brien, of Shearer, O'Brien, Blood, Agrella & Boose, of St. Charles, for appellants.

Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora (Donald L. Puckett, Peter K. Wilson, Jr., and John P. Duggan, of counsel), for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiffs, Idlehour Development Company and SSPF, Inc. (Idlehour), filed suit against the defendants, the City of St. Charles, its mayor, city attorney, and its councilmen. The complaint in count III charged that the individual defendants wrongfully impaired Idlehour's contractual rights with the city and claimed $7,500,000 in damages. The trial court found that the complaint failed to state a cause of action and entered an order of dismissal from which Idlehour appeals pursuant to Supreme Court Rule 304(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a)).[1]

The amended complaint alleges:

"3. On or about April 5, 1976, plaintiffs entered into a lease agreement with the defendant City of St. Charles, * * *. The

---

[1] In count I plaintiffs sought a declaratory judgment and preliminary injunction; in count II plaintiffs charged breach of contract by the city. Both counts are pending in the trial court.

property which is the subject matter of the said lease is located immediately adjacent to the easterly boundary line of the Fox River adjoining the municipal center, both located on State Avenue in St. Charles, Illinois, all as more fully appears from the said lease. The subject matter of the lease was the development of the subject property under a concept plan providing for the construction of specialty shops, offices and apartments in a two or three story configuration of approximately 80,000 square feet. The lease provides for a schedule of construction over a 7½ year period with duties and responsibilities imposed upon both parties. The said lease became effective by its terms on April 5, 1976 and plaintiffs entered into possession of the property in question on that date."

Idlehour further alleges that although it fully performed its obligations, the mayor caused a notice of default to be prepared and served upon it; that thereafter the city council adopted an ordinance or resolution purporting to terminate the agreement and to evict the plaintiffs; that this action impaired and obstructed Idlehour in its further performance of the contract; and that the city in so doing has breached its contract. The complaint continues: "5. On or about October 1, 1977 defendants * * * without legal or moral justification conceived and formed an animosity toward plaintiffs pursuant to which the said defendants contrived and entered into a plan and conspiracy wilfully and with malice aforethought to induce defendant City of St. Charles to unlawfully terminate plaintiffs' lease and to remove plaintiffs from the leased premises, well knowing that there was no legal ground or bases [sic] for such action and that the same would constitute a breach by the City of its lease agreement with plaintiffs"; further, that the various named individuals improperly caused the contractual rights of the plaintiffs with the city to be terminated by adopting ordinances and resolutions; and that

"9. As further evidence of the conspiracy to injury plaintiff [sic] and to maliciously cause a loss of their rights under the lease agreement, defendants made the following statement,
'The developer had until September 5 to arrange financing. The developer has not met that deadline and is in default.'
'I would like to see another developer to have a chance to come up with a better proposal.'
'What does SSPF have behind them except for the dream.'
'If the City goes ahead and says we'll give you more time, the City loses all its rights.'
'Why should the City accept a new deadline when Idlehour didn't meet the last one.'
'Any extension without competition proposals would be

wrong under the law and wrong if you are considering the public interest.'

All of said statements were made without justification, were made maliciously and with the desire and intent to injure plaintiffs."

Count III of the complaint concludes with allegations of plaintiffs' damages.

Idlehour contends that count III was improperly dismissed in that it states a cause of action for intentional interference with contractual relations based on malicious conduct performed without justification and in excess of defendants' statutory authority; and that defendants' actions were not directed at solely serving the interests of the city.

A thorough analysis of the doctrine of the tort of interference with contractual relations is found in *Swager v. Couri* (1979), 77 Ill. 2d 173, 187-91, a case involving a suit against officers of a business corporation, and will not be repeated here. The dispute is this case essentially focuses upon whether a cause of action has been pleaded to contain an essential element of the doctrine, an interference with contractual relations accomplished for an unlawful purpose and therefore without justification. (*Swager v. Couri* (1979), 77 Ill. 2d 173, 186, 190. See also *H. F. Philipsborn & Co. v. Suson* (1974), 59 Ill. 2d 465, 474.) The Illinois Supreme Court in *Swager v. Couri* has rejected the rule (previously stated in *W. P. Iverson & Co. v. Dunham Manufacturing Co.* (1958), 18 Ill. App. 2d 404, 419) that corporate officers act maliciously and without justification if they fail to act in "good faith." (*Swager v. Couri* (1979), 77 Ill. 2d 173, 190-91.) Instead, *Swager v. Couri* (1979), 77 Ill. 2d 173, 191, focused on the lawfulness or unlawfulness of the conduct as defined by the Business Corporation Act.

The trial court concluded that the allegations in count III of the amended complaint were consistent with the view that the mayor, city attorney and councilmen acted in accordance with their official duties and therefore no cause of action had been stated. Idlehour, however, argues that the allegations are sufficient to show that the defendants acted maliciously and with intent to injure Idlehour and that their conduct was not performed solely to serve the interests of the city and thus was in excess of their statutory, lawful authority.

■■ The allegations that the defendants acted "purposely and maliciously" and "without justification" and "in furtherance of the plan and conspiracy" to induce the city to unlawfully terminate plaintiffs' lease "well knowing that there was no legal ground or bases [*sic*] for such action" and "without legal or moral justification conceived and formed an animosity toward plaintiffs pursuant to which the defendants contrived and entered into a plan and conspiracy wilfully and with malice" to cause the breach of the contract, are conclusory and in themselves would be insufficient to

plead the elements of the cause of action with which we are concerned. In support of these, plaintiffs further alleged that the defendants made statements which were false and were known to be false to the effect that the developer had not made the deadline and was in default; that the defendants would like to see another developer come up with a better proposal, all this one had behind it was a "dream"; and that the defendants expressed a concern that if any extension of time were given to the developer to perform the city would lose contractual rights, concluding that the statements were made without justification, maliciously and with a desire and intent to injure the plaintiffs.

■■ The statements attributed to the defendants, taken by themselves, would show at best that the defendants as city officials were misinformed as to whether Idlehour was in default and as to the consequence of granting an extension. The allegations of "conspiracy" between themselves would not change the result if the alleged conspiracy lay in the exchange of statements which were not in themselves unlawful. However, taking the statement together with the allegation that the defendants' conduct was based on the personal animosity toward Idlehour, an ulterior motive not properly a part of their interest in the city's protection, places the statements in a different light. Claims will be liberally construed with a view to doing substantial justice. (Ill. Rev. Stat. 1977, ch. 110, par. 33(3).) Taken in total the allegations appear to state a cause of action for intentional interference with contracts. The lack of justification for the alleged wrongful conduct fairly appears on the face of the amended complaint. Compare *Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 897.

In reaching this conclusion we are mindful of the fact that the tort of intentional interference with contracts is not easily defined. It often depends upon whether the "protection of the particular contractual interest at issue merits prohibition of the particular conduct at issue." (*Swager v. Couri* (1979), 77 Ill. 2d 173, 190.) "By its very nature, a conspiracy, if one exists, normally precludes the one who is its object from being in a position to charge, with complete particularity, the details of conspiracy." (*Young v. Hansen* (1969), 118 Ill. App. 2d 1, 7.) Particularly in view of the still developing nature and analysis of the tort, we conclude that the trial court improperly dismissed this count. Idlehour should have an opportunity to introduce proof, if it is able to do so, that the defendants intentionally interfered with a valid contract, not in the exercise of their duties in a legitimate area of public concern, but because of a conspiracy in which their personal animosity towards Idlehour caused them to act in a malicious and unjustified manner. In so holding, we are not precluding the possibility that this case will be disposed of on summary judgment, or at any other stage of the proceeding, in favor of the defendants; we merely hold that the count is sufficient to state a cause of action.

■■ ■ Municipal officers can be liable for acts done ostensibly in the performance of official corporate duties but which are in fact an intentional misuse of the powers of the office. (*Young v. Hansen* (1969), 118 Ill. App. 2d 1, 9.) In the trial of the case the defendants are entitled to the benefit of a presumption that they have properly discharged their official duties. (*Tribune Co. v. Thompson* (1930), 342 Ill. 503, 529.) We also note that mere proof that the defendants formed an "animosity" towards Idlehour without proof that the animosity was coupled with wrongful acts done intentionally and without just cause would be insufficient. See *Marcus v. Wilson* (1973), 16 Ill. App. 3d 724, 730.

■■ Premised on proper proof of the elements of the tort the defendants would not be immune from liability under the discretionary immunity provision of sections 2—201 and 2—206 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1977, ch. 85, pars. 2—201 and 2—206). Discretionary immunity under section 2—201 "extends only to those types of acts not resulting from corrupt or malicious motives," and "a public official may not hide behind the cloak of immunity if he maliciously and intentionally misuses the powers of his office." (*Young v. Hansen* (1969), 118 Ill. App. 2d 1, 8-9.) Nevertheless, it must be kept in mind that the doctrine of quasi-judicial immunity rests on the principle that the municipal officer or employee "should be shielded from personal liability when making decisions assessing the public's needs and that such decisions should be made without fear of personal liability or the second-guessing of courts and juries." *Williams v. Board of Education* (1977), 52 Ill. App. 3d 328, 336.

The judgment of the trial court dismissing count III of the amended complaint is therefore reversed and the cause remanded to reinstate count III and to further proceed in accordance with this opinion.

Reversed and remanded with directions.

WOODWARD and NASH, JJ., concur.