MICHAEL CARTER, Plaintiff-Appellant, v. THE CITY OF ELMWOOD *et al.*, Defendants-Appellees.

Third District   No. 3—87—0125

Opinion filed October 30, 1987.

Braud, Warner, Neppl & Westensee, Ltd., of Rock Island (Roxy M. Schumann, of counsel), for appellant.

Davis & Morgan, of Peoria (Stephen D. Gay, of counsel), for appellees.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Michael Carter, filed suit against the defendants, the city of Elmwood, its mayor, and the members of the Elmwood city council, seeking damages for his alleged wrongful discharge as a full-time police officer. Count I of Carter's complaint sought damages based on a theory of retaliatory discharge and count II sought recovery for violation of his civil rights pursuant to 42 U.S.C. sec. 1983 (1982). Upon motion of the defendants, count I was dismissed with prejudice. The circuit court of Peoria County made the appropriate findings and we hear this appeal pursuant to Illinois Supreme Court Rule 304(a). 107 Ill. 2d R. 304(a).

Carter served as one of only two full-time officers of the Elmwood police department. His employment began in December 1981. The other full-time officer was the chief of police. In October 1982, the Elmwood city chief of police was admitted to St. Francis Hospital in Peoria, where he received psychiatric treatment. When the chief returned to work, he committed the following criminal offenses in viola-

tion of existing State law: (1) he unlawfully possessed firearms and ammunition after being a patient in a mental hospital within five years, (2) he had made application for and obtained a firearm owner's identification card after he had been a patient in a mental hospital within five years, and (3) he made alcoholic beverages available to minors. Carter notified the mayor of Elmwood of these violations on March 4, 1983, and three days later notified the Peoria County State's Attorney's Office.

On July 5, 1983, the Elmwood city council adopted a budget appropriation which cut $18,000 from the existing police budget. The effect of the budget cut was to eliminate 40 hours of full-time police employment and increase the part-time police officer service by 20 hours. Although no reference was made to Carter in the minutes, the effect of the council's action was to eliminate his position. On July 6, 1983, Carter was served with notice of termination.

On November 16, 1983, Carter filed a notice of lawsuit with the Elmwood city clerk and the following day filed his two-count complaint against the city, its mayor, and the city council. In December 1983, the city council amended the July budget appropriation ordinance to read that the one full-time patrolman position would be abolished.

After extensive motion practice, the defendants filed a motion to dismiss pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619), stating that, as a matter of law, the complaint should be dismissed because they were entitled to immunity under sections 2—103, 2—201, and 2—205 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, pars. 2—103, 2—201, 2—205). After a hearing on the motion, the trial court dismissed count I of the complaint, sounding in retaliatory discharge, and Carter appeals.

This appeal presents only one question for our consideration. Assuming for the purposes of this appeal that Carter has alleged sufficient facts to support his claim of retaliatory discharge, we must determine whether the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 1—101 et seq.) (Tort Immunity Act) shields the municipality and its officials from liability where the discharge results from legislative action.

We must note that there are strong public policy concerns which dictate that public officials be shielded from liability in civil actions based upon their vote, in the exercise of discretion, either for or against any legislation. (See Mahoney Grease Service, Inc. v. City of Joliet (1980), 85 Ill. App. 3d 578, 406 N.E.2d 911.) This doctrine of

quasi-judicial immunity rests on the principle that the municipal officer or employee " 'should be shielded from personal liability when making decisions assessing the public's needs and that such decisions should be made without fear of personal liability or the second-guessing of courts and juries.' " *Idlehour Development Co. v. City of St. Charles* (1980), 88 Ill. App. 3d 47, 52, 409 N.E.2d 544, quoting *Williams v. Board of Education of Clinton Community Unit School District No. 15* (1977), 52 Ill. App. 3d 328, 336, 367 N.E.2d 549.

The language of section 2—205 of the Tort Immunity Act is clear and unequivocal. The statute states:

"A public employee is not liable for an injury caused by his adoption of, or failure to adopt, an enactment, or by his failure to enforce any law." (Ill. Rev. Stat. 1985, ch. 85, par. 2—205.)

We have found no cases that directly interpret section 2—205 relating to a legislative body adopting or failing to adopt an enactment. Even this court's opinion in *Mahoney,* upon which the defendants rely, was based upon common law doctrines of legislative immunity and not on an interpretation of section 2—205.

Our only reference to section 2—205 in *Mahoney* was that one count of the complaint was barred even though it alleged wilful and wanton misconduct. We offered no discussion on the issue then, but this case requires that we clarify that statement. Section 2—205 specifically states that a legislative body is not liable for an injury caused by the legislative process. Unlike other sections of the Tort Immunity Act (see Ill. Rev. Stat. 1985, ch. 85, par. 2—201), section 2—205 contains no language relating to wilful or wanton misconduct. This triggers the familiar maxim of construction that the inclusion of one is the exclusion of all else. Because the Illinois legislature could have easily inserted the "wilful and wanton" language in section 2—205, but did not, the only logical conclusion can be that the immunity conferred under section 2—205 is absolute.

Carter contends that *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876, is decisive in this case because the plaintiff in that case, as was alleged here, was discharged for reporting the criminal actions of another employee. While we agree with the holding in *Palmateer,* we find its holding inapplicable to the present case. Even if Carter was able to sufficiently allege facts supporting his theory of retaliatory discharge, it would not assist him in clearing the first hurdle, which relates to immunity. And that, as we have stated, is the only issue raised by this appeal. Carter also points to the case of *Idlehour Development Co. v. City of St. Charles* (1980), 88 Ill. App. 3d 47, 409 N.E.2d 544, as a factually similar case which

denied legislative immunity. Without a lengthy discussion of *Idlehour*, that case was decided under section 2—206 of the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 2—206), which relates to the granting and revocation of permits, licenses, etc. Hence, it is distinguishable from the present case.

On this basis, and in reaffirming our ultimate decision in *Mahoney*, we hold that the legislative immunity granted in section 2—205 requires that we affirm the dismissal of count I of Carter's complaint.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY, P.J., and HEIPLE, J., concur.