**Joyce RAISER, Plaintiff,**

v.

**Jack O'SHAUGHNESSY, et al., Defendants.**

**No. 92 C 286.**

United States District Court, N.D. Illinois, E.D.

Aug. 13, 1993.

Paul L. Strauss, Davis, Miner, Barnhill and Galland, P.C., Chicago, IL, for plaintiff.

Denise M. Mercherson, Cook County State's Attorney's Office, Karen J. Dimond, Chicago, IL, for defendants.

### MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Joyce Raiser (Raiser) has filed claims under Title VII, 42 U.S.C. § 2000e *et seq.*, against defendants Cook County, Illinois (the County), Michael F. Sheehan, Sheriff of Cook County, Illinois (Cook County Sheriff), Jack O'Shaughnessy (O'Shaughnessy), Thomas Randich (Randich), Eugene Hansen (Hansen), and Oscar Schiappa (Schiappa), as well as a claim under 42 U.S.C. § 1983 against O'Shaughnessy, Randich, Hansen and Schiappa. Raiser alleges that she was verbally and physically harassed and given inferior work assignments because of her sex, and that she was precluded from obtaining County jobs because she filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC). Defen-

dants now move for partial summary judgment on all claims involving physical injury to plaintiff, for dismissal of all claims against Schiappa, and for dismissal of the retaliation claims against Cook County and the Cook County Sheriff.

## BACKGROUND

For the purpose of assessing defendants' motions the court assumes the truth of the facts asserted in plaintiff's third amended complaint.

Raiser was employed by Cook County, Illinois, as a laborer in the skilled trades department at Oak Forest Hospital from approximately August 1990 to December 2, 1991. She was the first and only woman assigned to that department, where over 100 men were employed during the time period in question. Her immediate supervisor was Hansen; Hansen reported to Randich and Randich reported to O'Shaughnessy.

When Raiser was hired she was ordered to report to Hansen at his office, where she was to receive her daily work assignments and was required to sign in and out. Hansen's office was located inside a men's locker room, a small room that also contained open showers, a partially open urinal, and clothes lockers. Raiser herself used a women's locker room in another facility but, because her presence was required at Hansen's office, she routinely was exposed to men changing their clothes and showering.

During her first six months at the hospital Raiser complained to management and her union shop steward, Pete Pauley, that the open configuration of the shop humiliated her and angered some of the men. She proposed that a curtain be installed in front of the showers, or that some other change be implemented, and Randich responded that he would "look into it." For many months, however, no changes were made. Another locker room with showers and toilets was located a short distance down the hall, but the men were not ordered to use that facility.

Raiser's problems went beyond the physical setup of the workplace. Hansen, Randich and O'Shaughnessy intentionally assigned Raiser to particularly unpleasant jobs to haze her because she was a woman. Unlike the men, she frequently was left to complete difficult or dangerous tasks by herself. She also was denied certain more desirable assignments, such as driving a forklift, in favor of less experienced men.

The men in the shop frequently directed foul and sexually-explicit language toward her and called her derogatory names. Raiser reported the comments to her supervisors, who themselves heard some of the offensive speech, but none of the men was disciplined. Several men also posted photographs of naked women on their lockers, but despite plaintiff's complaints to her supervisors the photographs were not removed. Several men explicitly told plaintiff that they did not like working with a woman, and Hansen told her that O'Shaughnessy disliked having a woman in his shop.

In December 1990 plans were drawn in preparation for installing shower curtains and enclosing the urinal in the shop. That same month, however, Raiser began hearing from co-workers that management planned to "get rid of her," and the modifications were not implemented. After one particularly unpleasant harassing incident Raiser confronted Pauley, who responded by criticizing her for being too sensitive and then stated, "We got rid of the nigger, and we're going to get rid of you." Apparently Pauley was referring to Gus Monier, the last African–American employee assigned to the shop, who had recently retired. At about this time many of the men began giving Raiser the "silent treatment," refusing to speak to her.

Finally, after several more complaints, one of which resulted in an order from hospital officials to remove the showers and the urinal completely, a curtain was installed in front of the shower and the urinal was enclosed. The changes were an improvement, but men continued to walk back and forth from their lockers to the shower after undressing, and at least one of them intentionally undressed in front of plaintiff, ignoring the curtain.

Raiser's relationship with the men in the shop, and Pauley in particular, worsened over the next few months. On one occasion Pauley spat at her feet after she said hello to him. On another he demonstratively un-

zipped and zipped his fly as he entered and exited the urinal stall. Raiser complained to Randich and other hospital administrators but Pauley was not disciplined. One worker refused to ride in a truck with plaintiff because she was, in his opinion, a "bitch." He then threatened to put an ice pick in her heart if she reported him. Several workers refused to help her with heavy jobs and laughed at her as she struggled with them. O'Shaughnessy and Randich discouraged the men from behaving civilly toward her. One co-worker, Tony Castro, was given a disciplinary warning for speaking to her during a coffee break.

On about April 15, 1991, Raiser was injured when a heavy door caught and smashed her hand. Approximately one month later, after her condition worsened, her personal physician recommended that she be restricted to "light duty." Randich ignored the doctor's advice and assigned her to very heavy work in an effort to induce her resignation. After another visit to her doctor, who recommended that she be restricted to work that did not require repetitive use of her right hand, Raiser was ordered to see defendant Schiappa, a doctor at the hospital. Schiappa cleared her for regular work, and she subsequently was ordered to lift heavy concrete blocks. She injured her shoulder as a result. She was placed on modified duty after her second injury, but when she visited Schiappa again he again directed her to return to regular duty. The doctor told Raiser that O'Shaughnessy and Randich had instructed him to put her back to work, and he urged her to look for a new job to avoid further injury. There was no way she could win, he said.

On June 12, 1991, Raiser's private physician recommended that she take a leave of absence because of her injuries, and she did not return to work. On July 2 and July 10, 1991, however, Schiappa again instructed her to return to regular duty. On July 23, 1991, she returned to Schiappa for another examination. During the examination he twisted her arm, further injuring her. She was treated for her injuries at another hospital, and an examination the next day revealed both bruises on her arm where it had been grabbed and twisted by Schiappa, as well as new injuries to her shoulder.

Raiser then filed a worker's compensation claim based on injuries to her wrist, arm and shoulder. An independent medical examiner found injuries to her shoulder and recommended that the County provide her with rehabilitation services, but the County decided, based on reports from Schiappa, that no services were needed. In December 1991 Raiser asked to be returned to work on modified duty. She was not permitted to return.

Starting in December 1990 and continuing through March 1992 Raiser sought to be transferred to another unit of Cook County, or a related political entity, to work at a job comparable to the one she had at the hospital. She discussed her wishes on a number of occasions with County officials, including Eric Adelstein, who worked with County Board President Richard Phelan, and Marty Walsh, who worked at the Cook County Sheriff's office. In January 1992 Raiser filed a discrimination claim with the EEOC. Approximately one month later Walsh informed her that Adelstein had indicated that no one in County government was to hire her as long as she had a claim pending against County officials. Because she refused to drop her case, she effectively was precluded from applying for thousands of County positions.

### DISCUSSION

In support of its motion for partial summary judgment, defendants argue that the Illinois Workers' Compensation Act provides the exclusive remedy for physical injuries suffered by County employees. 820 ILCS 305/5(a). That argument is easily defeated. At issue in this case are federal claims, and federal law takes priority over any state law provisions that directly or effectively contradict or interfere with it. *Hayfield Northern Railroad Co., Inc. v. Chicago & North Western Transportation Co.,* 467 U.S. 622, 627, 104 S.Ct. 2610, 2614, 81 L.Ed.2d 527 (1984). *See also Rosa v. Cantrell,* 705 F.2d 1208, 1220–21 (10th Cir.1982), *cert. den.,* 464 U.S. 821, 104 S.Ct. 85, 78 L.Ed.2d 94 (1983) (holding that § 1983

preempts state workers' compensation law); *Walker v. Rowe,* 535 F.Supp. 55, 57 (N.D.Ill. 1982), *rev'd on other grounds,* 791 F.2d 507 (7th Cir.1986), *cert. den.,* 479 U.S. 994, 107 S.Ct. 597, 93 L.Ed.2d 597 (1986) (same). The County suggests that Raiser waived her right to take advantage of federal law when she filed a workers' compensation claim, but the state cannot condition workers' compensation protection on the waiver of rights afforded by the federal·constitution and Title VII, for such a condition would itself amount to a violation of those federal rights. The motion for partial summary judgment is therefore denied.

■ Defendant Schiappa moves for dismissal of the Title VII and § 1983 claims against him, and defendants Cook County and Cook County Sheriff move for dismissal of the Title VII retaliation claims against them. Schiappa's argument has no merit. Essentially, he argues that because he was neither plaintiff's supervisor nor her co-worker, he cannot be held liable under Title VII or § 1983. His position is legally and factually erroneous. Schiappa was a co-worker in that he also worked for the hospital, and he exercised indirect managerial authority over plaintiff in that he had the power to order her back to work, without any allowances for her injuries, notwithstanding her personal physician's objections. Moreover, as a legal matter, anyone with control over employment opportunities or conditions may be liable under Title VII. *See, e.g., Vakharia v. Swedish Covenant Hospital,* 765 F.Supp. 461, 468 (N.D.Ill.1991) (upholding a Title VII claim by doctor against a hospital for discriminatorily denying her staff privileges and thereby interfering with her potential employment relationships with patients); *Dunn v. St. Louis County,* 1989 WL 35541 (E.D.Mo.) (upholding a Title VII claim by a student against a private firefighter school for setting discriminatory standards that interfered with her potential employment relationship with a city fire department); *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith,* 611 F.Supp. 344 (S.D.N.Y.1984), *aff'd* 770 F.2d 157 (2nd Cir.1985) (upholding a Title VII claim by an administrative assistant against a customer of a temporary personnel agency for discriminatorily ending her temporary work assignment and thereby interfering with her employment relationship with the personnel agency); *Puntolillo v. New Hampshire Racing Commission,* 375 F.Supp. 1089 (D.N.H.1974) (upholding a Title VII claim by a harness horse driver against a state regulatory agency for discriminatorily denying him stall space and a racing license and thereby interfering with his potential employment relationships with horse owners). As it happens, Schiappa was vested with a certain degree of managerial authority by plaintiff's employer, but that fact is almost irrelevant since a proper defendant need not be a boss or a co-worker.

Schiappa might take comfort in the cases suggesting that an agent of an employer may not be held personally liable under Title VII for action taken on the employer's behalf. *See, e.g., Weiss v. Coca–Cola Bottling Co. of Chicago,* 772 F.Supp. 407, 411 (N.D.Ill.1991); *Pommier v. James L. Edelstein Enterprises,* 816 F.Supp. 476, 481 (N.D.Ill.1993). On that theory, the only defendant liable under Title VII for Schiappa's actions would be the County, since the County had ultimate responsibility for ensuring the fairness of its employment practices. However, as this court noted in *Vakharia v. Swedish Covenant Hospital,* 824 F.Supp. 769, 776–77 (1993), the holdings of those cases are inconsistent with the broad remedial purposes of the statute. They also collide with the large body of caselaw, only a fraction of which is cited above, that holds that liability under the statute may extend to persons who control employment opportunities even if they are not employers themselves. In any event, quite apart from Schiappa's potential liability under Title VII, there is no dispute that he, like all other agents of the state, may be held liable in his personal capacity under § 1983.

■ The arguments by Cook County and the Cook County Sheriff also are without merit. Plaintiff is required under Rule 8(a) of the Federal Rules of Civil Procedure to make a short and plain statement of her claim. She does not have to allege all of the particulars that she may later use to prove her case, and the fact that Cook County and the Cook County Sheriff are governmental

**1138**

entities does not increase her burden. *See Hammond v. Town of Cicero*, 822 F.Supp. 512, 514–15 (N.D.Ill.1993). In her third amended complaint she has alleged that in retaliation for her filing of a discrimination claim the County and the County Sheriff refused to consider her for thousands of jobs for which she was qualified. The complaint states when the retaliation occurred and identifies some of the officials who carried it out. That more than meets the requirements of Fed.R.Civ.P 8(a). The motion to dismiss is denied as well.

### CONCLUSION

For the reasons stated, defendants' motions for partial summary judgment and dismissal are denied.