Michelle DIRKSEN, Plaintiff,

v.

CITY OF SPRINGFIELD, Springfield Police Department, Kirk Robinson, Mayor Ossie Langfelder, George Judd, George Murphy, and Jim Cimarossa, Defendants.

No. 93–3304.

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 9, 1994.

Patricia L. Hayes, Springfield, IL, for plaintiff.

James K. Zerkle, Gary S. Rapaport, Springfield, IL, for defendants.

## OPINION

RICHARD MILLS, District Judge:

An allegation of sexual harassment.

Plaintiff: Michelle Dirksen, a secretary with the City of Springfield Police Department.

Defendants: The City of Springfield, former Springfield Police Chief Robinson, Mayor Langfelder, and Springfield Police supervisors Judd, Murphy, and Cimarossa.

This cause is before the Court on Defendants' motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6).

### I. *Allegations*

The Court assumes for this ruling the truth of the following allegations: Plaintiff was hired as a secretary with the City of Springfield Police Department on June 8, 1987. Defendant Robinson joined the Springfield Police Department as an officer on August 21, 1978. Prior to Defendant Robinson's employment with the Springfield Police Department, Plaintiff alleges Robinson had been disciplined at a previous job "for sexual discrimination and harassment." He was appointed Assistant Commander of the Springfield Police Department in March 1988, Commander in August of 1990, Assistant Chief of Police in October of 1991, and Chief of Police in November of 1992. In all of these positions, Defendant Robinson had supervisory authority over female employees of the Springfield Police Department.

During the time Plaintiff was employed by the Springfield Police Department, she alleges that Robinson made numerous nonconsensual sexual advances toward her which included: attempts to kiss and touch her body, offensive placement of his hands on her body, forcing the placement of her hands on his body, and attempted sexual assault. These sexual advances occurred during work hours.

The last alleged sexual assault occurred on December 17, 1992. At this time, Plaintiff claims that Chief Robinson "forcibly attempted to have sexual intercourse with the Plaintiff." Plaintiff also alleges that Chief Robinson stated that if Plaintiff wanted to be promoted to his personal secretary, she must submit to sexual intercourse with him.

On January 6, 1993, Plaintiff reported Robinson's alleged sexual harassment to Defendant Jim Cimarossa. Cimarossa was the Assistant Deputy Chief of the Springfield Police Department. Although Springfield Police Department regulations required Cimarossa to report the sexual harassment to Mayor Langfelder, Plaintiff alleges that Cimarossa failed to file such a report with Mayor Langfelder. Instead, on January 14, 1993, Cimarossa advised Plaintiff not to report the harassment to internal affairs and to "work it out" with Defendant Robinson.

On January 19, 1993, Plaintiff reported the incident of sexual assault and harassment to her supervisor, Deputy Chief George Murphy and Assistant Deputy Chief Harvey Davis. Again, although Springfield Police Department regulations required Murphy and Davis to report the sexual harassment to Mayor Langfelder, Murphy allegedly refused to report the harassment and instead told Robinson of Plaintiff's allegations.

On January 21, 1993, Plaintiff went to the Springfield Police Department of Internal Affairs ("internal affairs") and filed a complaint regarding Robinson's harassment and the treatment she received from Murphy and Cimarossa.

Also on January 21, 1993, Plaintiff applied for a position with the City of Springfield Department of Tourism. Plaintiff submitted her application to the City of Springfield Personnel Department and the personnel department forwarded her application to the Mayor's office.

On January 22, 1993, Mayor Langfelder learned of Plaintiff's complaint. Further, Plaintiff alleges that despite the recommendations made by internal affairs to place Chief Robinson on limited duty, Mayor Langfelder refused to take any remedial action against Robinson. Mayor Langfelder also refused to take any remedial action against Defendants Murphy and Cimarossa. In addition, it is alleged that when Mayor Langfelder became aware of Plaintiff's harassment Complaint, he failed to forward Plaintiff's job application to the Springfield Department of Tourism.

On January 25, 1993, Mayor Langfelder asked the Illinois State Police to do an internal investigation regarding Plaintiff's sexual harassment complaint. During the investigation conducted by the Illinois State Police, Plaintiff alleges that other female subordinates of Defendant Robinson reported that they had also been harassed by Robinson. However, no action was taken against Robinson as a result of the investigation conducted by the Illinois State Police.

Later, at some unspecified date, Robinson appointed Defendant George Judd to the new Deputy Chief of Operations for the Springfield Police Department. Plaintiff was assigned as Judd's personal secretary.

Judd allegedly began to change the "conditions of Plaintiff's employment" in an unspecified way. He also allegedly advised other unspecified members of the Springfield Police Department of his intent to hire a new secretary.

Chief Robinson was placed on administrative leave on April 1, 1993.

On April 2, 1993, Judd engaged in a "verbal confrontation" with Plaintiff and indicated an "intention to change her working conditions." On that same day, it is alleged that a legal representative of Mayor Langfelder advised internal affairs to remove Plaintiff from her work area because of Plaintiff's hostile work environment. No action was taken against Defendant Judd.

On April 2, 1993, Plaintiff took a medical leave of absence.

On April 8, 1993, Plaintiff filed a complaint of sexual harassment against the City of Springfield, Mayor Langfelder, Kirk Robinson, and George Judd with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission.

On May 17, 1993, after returning to work after a medical leave of absence, Plaintiff was given a temporary position as a receptionist for the Springfield Police Department. This position has adversely affected Plaintiff's chances for promotion and advancement.

On May 26, 1993, Defendant Robinson resigned as Chief of Police. Since his resignation, Robinson has been appointed to the position of "Commander" and continues to supervise female employees.

On June 25, 1993, Plaintiff requested a return to her original position as a secretary. That request was denied.

On December 6, 1993, Plaintiff filed the instant ten Count Complaint. Count I alleges a cause of action for *"quid pro quo"* harassment against all Defendants "individually" under Title VII (42 U.S.C. § 2000e). Count II alleges a cause of action for "hostile work environment harassment" against all Defendants "individually" under Title VII. Count III alleges a cause of action for reverse discrimination against Defendants City of Springfield, Mayor Langfelder, Kirk Robinson, and George Murphy under Title VII. Count IV alleges a cause of action for "retaliation" under Title VII against all Defendants "individually" under Title VII. Count V alleges a cause of action against all Defendants under 42 U.S.C. § 1983. Count VI alleges a state law claim for intentional infliction of emotional distress against all Defendants. Count VII alleges a state law claim for negligent infliction of emotional distress against all Defendants. Count VIII alleges a state law cause of action for negligent retention against the City of Springfield and Mayor Langfelder. Count IX alleges a state law claim for negligent hiring against the City of Springfield and Mayor Langfelder. Count X alleges a state law claim for battery against Defendant Robinson for entering Plaintiff's home on December 12, 1992 and indecently

soliciting her to have sexual intercourse with him.

Plaintiff prays for: (1) an injunction to restrain Defendants from committing future Title VII violations and directing Defendants to take affirmative steps to stop all Title VII violations; (2) compensatory and punitive damages; (3) costs and attorney fees.

## II. *Analysis*

### (A). *Claims arising under Title VII*

#### 1. *Timeliness of the Complaint*

■ In order to maintain a Title VII action, a plaintiff who initially files a complaint with a state agency must file a complaint with the EEOC within 300–days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e)(1) (1992).

In this case, Plaintiff filed her Title VII charge with the EEOC on April 8, 1993. Accordingly, the Defendants argue that any claims against the Defendants which occurred prior to June 12, 1992 (June 12, 1992 is 300–days before April 8, 1993) should be time-barred.

However, the 300–day limit may be expanded. In *Stewart v. CPC Intern., Inc.*, 679 F.2d 117, 121 (7th Cir.1982), the court stated that an:

> employer may be held liable for a continuing practice of discrimination if the plaintiff can demonstrate that the practice has actually continued into the 'present'-that is, into the time period relevant to the date the charge of discrimination was filed. At least one discriminatory act must have occurred within the charge-filing period. Discriminatory acts that occurred prior to this period constitute relevant evidence of a continuing practice, and may help to demonstrate the employer's discriminatory intent; and they will of course be used to determine the extent of the remedy that is in order.

*Id.* (citations omitted). *See also Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410 (10th Cir.1993).

Thus, the question before the Court is whether Plaintiff's Complaint alleges[1] a

---

1. For purposes of this motion to dismiss, Plaintiff

need only allege that the discriminatory acts pri-

"continuing practice of violations." Plaintiff's Complaint alleges numerous unspecified sexual advances committed by Defendant Kirk Robinson before and after the June 12, 1992 date. The last sexual advance by Robinson allegedly occurred on December 17, 1992. Most of the allegations against the other Defendants occurred after June 12, 1992. Thus, the Court finds that Plaintiff successfully alleged that at least one discriminatory act occurred (the December 17, 1992 incident) within the 300–day period and this act was part of a continuing policy that includes other acts within the statutory period. *Martin*, 3 F.3d at 1415. Accordingly, Plaintiff will be given the opportunity to discover whether the incidents of discrimination prior to June 12, 1992 constitute a continuing course of discrimination.

### 2. *Failure to State a Claim*

■ Next, Defendants contend that Plaintiff failed to state a case for *quid pro quo* sexual harassment—labeled by Plaintiff as Count III "Reverse Discrimination."

In Count III, Plaintiff alleges that she was not permitted to return to her original position as a secretary in the operations division of the Springfield Police Department after a leave of medical absence because:

> her position was filled by a person who was having a sexual relationship with Defendant Robinson and the relationship between this co-worker and Defendant Robinson was a substantial factor in her appointment and the decision not to return Plaintiff to her position as Staff Secretary II for Operations.

Defendant argues that these allegations are insufficient to state a Title VII sex discrimination claim. This is because, Defendants contend, Plaintiff was not discriminated against on the basis of her "sex," rather, she was discriminated against because her boss allegedly favored his paramour. This type of discrimination, Defendants argue, is more akin to nepotism than sexism.

or to June 12, 1992 were part of a continuing policy of discrimination because discovery has

To date, the Seventh Circuit has not addressed the issue of whether this type of allegation constitutes sexual harassment.

Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). As the Seventh Circuit noted in *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1085 (7th Cir.1984), because the word "sex" was added to Title VII shortly before passage, there is a "total lack" of legislative history to guide courts in interpreting Title VII's prohibition against discrimination based on sex.

In *DeCintio v. Westchester County Medical Ctr.*, 807 F.2d 304 (2d Cir.1986), the case cited by Defendants in support of this motion, seven male physical therapists brought a Title VII sex discrimination claim against their employer. The plaintiffs alleged that the program administrator recommended national board registration as a job requirement of the position which they sought promotion in order to disqualify them as applicants so that the program administrator could then hire a female with whom he had a consensual, romantic relationship. *Id.* at 305. The Second Circuit held that the plaintiffs failed to state a Title VII sex discrimination claim. The Court noted that the plaintiffs were not prejudiced because they were males but because the decision-maker preferred his paramour; the males faced the same situation as any woman other than the paramour because of the relationship. The court emphasized that the "proscribed differentiation under Title VII ... must be a distinction based on a person's sex, not on his or her sexual affiliations." The court could find "no justification for defining 'sex,' for Title VII purposes, so broadly as to include an ongoing, voluntary, romantic engagement." *Id.* at 307. Essentially, *DeCintio* defined "sex" for the purposes of Title VII claims, as membership in a class delineated by "gender," rather than a class delineated

not commenced in this case.

by sexual activity regardless of gender or sexual affiliations.

Thus, as in *DeCintio*, Defendants argue that the alleged discrimination by Robinson was gender neutral: he did not discriminate against her on the basis of her sex; rather, he showed favoritism for his paramour.

The Court does not agree.

Plaintiff alleges that it was generally necessary for *women* to grant sexual favors to Robinson for professional advancement. It was not a single instance of favoritism based on a relationship as in *DeCintio*. For example, Robinson allegedly told Plaintiff that sexual favors were the quid pro quo for appointment to be his personal secretary. In addition, when Plaintiff left the police force on medical leave, she was replaced by a worker who was having sexual relations with Robinson. Thus, unlike *DeCintio*, the alleged discriminatory conduct here is "gender" based discrimination—submission to sexual demands on the part of women is a condition to tangible employment benefits. 29 C.F.R. § 1604.11(g) (1986) ("Where employment opportunities or benefits are granted because of an individual's submission to the employer's sexual advances or requests for sexual favors, the employer may be held liable for unlawful sex discrimination against other persons who were qualified for but denied the employment opportunity or benefit."); *Piech v. Arthur Andersen & Co.*, 841 F.Supp. 825 (N.D.Ill., 1994) (similar facts to instant case).

Accordingly, because Plaintiff alleged a case of *quid pro quo* sexual harassment, Defendants' motion to dismiss Count III (inap-

propriately labeled by Plaintiff as "Reverse Discrimination") is DENIED.

### 3. *Individual Capacity*

■ Third, Counts I, II, and IV of Plaintiff's Complaint state Title VII claims against each Defendant "individually." Defendants move to dismiss the Title VII claims as they relate to Defendants sued in their "individual capacity." [2]

When a plaintiff sues a municipal officer in the officer's individual capacity for alleged civil rights violations, the plaintiff seeks money damages directly from the individual officer. However, Title VII only imposes liability upon "employers" who violate Title VII's provisions. 42 U.S.C. §§ 2000e–2. Section 2000e(b) defines an "employer" as "a person engaged in an industry affecting commerce . . . and *any agent* of such a person." (Emphasis Ours).

In this case, the Defendants, with the exception of the City of Springfield, are not "employers." Further, though the Seventh Circuit has not addressed this issue,[3] the Court agrees with the ruling of other circuit courts that only when a public official is working in an "official capacity" is that official an "agent" of the government. *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993); *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587 (9th Cir.1993); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991); *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir.1990). Thus, individual capacity suits under Title VII are inappropriate in this case—Plaintiff must plead "official capacity" suits. *Busby*, 931 F.2d at 772.

Accordingly, the individual capacity suits against all Defendants (including the City of

---

**2.** The Court is confused by Defendants' approach. Even though Plaintiff alleges three Title VII causes of action for *all Defendants* in their individual capacity (Count III does not specify whether it is an official capacity or individual capacity suit), Defendants' motion only addresses the first two causes of action ("paragraphs 72 and 76.") in their motion to dismiss. Similarly, even though the Defendants' argument could exonerate George Judd, George Murphy, and Jim Cimarossa from individual liability, Defendants motion only asks to dismiss Mayor Langfelder and Kirk Robinson.

In the interest of judicial economy, the Court will assume that Defendants' have made a typo-

graphical error and treat Defendants motion as a motion to dismiss all Title VII causes of action against *all* Defendants. Plaintiff has leave to file a motion to reconsider this issue.

**3.** Plaintiff cites *Raiser v. O'Shaughnessy*, 830 F.Supp. 1134, 1137 (N.D.Ill.1993) for the proposition that there is liability for backpay under Title VII for the actions of co-workers. The Court believes this case was decided on the § 1983 issue, not the Title VII issue because *Raiser* spoke only of "potential liability" under Title VII. *Id.*

In any event, this holding is inapposite to the decisions of many circuit courts cited above.

Springfield [4]) in Counts I, II, and IV are dismissed without prejudice.

### B. *1983 Claims*

#### (1). *Municipal Liability*

Defendant City of Springfield ("Springfield") next argues that it should not be liable for the actions of the other Defendants because Plaintiff failed to allege that she was denied equal protection pursuant to an official policy or custom. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Springfield may only be liable for constitutional violations arising under its formal policies or well established customs. *Id.* The Seventh Circuit has stated that a formal policy or custom is not established by " 'the isolated, intentional acts of an officer [without authority to set municipal policy]....' " *Gray v. Dane County*, 854 F.2d 179, 183 (7th Cir.1988) (citations omitted). However, " 'where the plaintiff alleges a pattern or a series of incidents of unconstitutional conduct, ... the courts have found an allegation of policy sufficient to withstand a dismissal motion.' " *Id.* (citations omitted). In addition, " 'a single act of a sufficiently high-ranking policy-maker is sufficient to establish an entity's policy or custom.' " *Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180, 1189 (7th Cir.1986) (citations omitted).

In *Gray*, the plaintiff was a communications officer at the county sheriff's office. The court noted that plaintiff's allegations of sexual harassment which included two specific instances of sexual harassment at the county sheriff's department, wage discrimination in two positions, and numerous forms of on-the-job retaliations for her complaints would be "sufficient" to state a claim of constitutional violations pursuant to a municipal practice or custom. However, also in plaintiff's complaint was a description of the grievance procedures which plaintiff pursued at the county level. In response to plaintiff's complaints about women receiving less pay than men, the county increased the pay for the female workers. The county also direct-

ed the sheriff's office to reassign plaintiff so that she could work under a different supervisor. The court found that the "existence of workable review procedures at the county level" undermined her claim that there was a policy or custom " 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.' " *Id.* at 184 (citations omitted).

The City of Springfield argues that it—as in *Gray*—responded to Plaintiff's complaint. Springfield contends that it has a policy of prohibiting sexual harassment and providing discipline for violators. Moreover, once internal affairs learned of Plaintiff's complaint, Mayor Langfelder was informed and he initiated a Illinois State Police investigation of the incident. Mayor Langfelder ultimately accepted Chief Robinson's resignation following the investigation.

The Court does not agree.

■ Plaintiff alleges a custom or practice of discrimination at the highest level of Springfield Police Department policy making. Mayor Langfelder was allegedly slow to take action against Robinson. Indeed, Robinson still allegedly supervises women at the Springfield Police Department. Moreover, Plaintiff contends that Mayor Langfelder did not forward her resume to the Springfield Department of Tourism when he learned that Plaintiff filed a complaint with the EEOC. Mayor Langfelder is also accused of refusing to return Plaintiff to her normal work station because he was named as a defendant in Plaintiff's complaint with the EEOC. In addition to Mayor Langfelder, Robinson, the former Chief of Police, is accused of long-term acts of sexual harassment against Plaintiff and other women employees at the Springfield Police Department. Robinson is also accused of granting job benefits as the *quid pro quo* for sexual favors. Plaintiff also alleges that Defendants Judd, Murphy, and Cimarossa (other Springfield Police supervisors) retaliated or failed to take action against her harassment complaints. In short, even though Springfield and the

---

**4.** The Court dismisses the City of Springfield because it, like all other Defendants, was sued in its individual capacity.

Springfield Police Department had regulations to combat sexual harassment, Plaintiff's allegations suggest that it was the custom or practice of the top officials at the Springfield Police Department to circumvent these regulations. *See Bohen,* 799 F.2d at 1189.

Therefore, assuming the truth of Plaintiff's allegations, the Court finds that Plaintiff has stated a cause of action for municipal liability against Springfield.

### (2). *Qualified Immunity*

Plaintiff's § 1983 suit is brought against all Defendants in their "individual" capacity.

■ Defendants Mayor Langfelder, Judd, Cimarossa and Murphy move to dismiss this Count on the basis that they are entitled to "qualified immunity." Government officials are entitled to qualified immunity from individual capacity § 1983 suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 802–3, 102 S.Ct. 2727, 2729–30, 73 L.Ed.2d 396 (1982). Plaintiff bears the burden of establishing the existence of an objective constitutional right that was violated. *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). Further, a "clearly established" constitutional right is found where:

> Case law may exist that legitimate our recognition of the protected liberty interest, but it does not necessarily mean that the right was also clearly established. While cases involving the exact fact pattern at bar are unnecessary, case law in *a closely analogous area is crucial to permit us to conclude that reasonably diligent government officials would have known of the case law,* related it to the situation at hand, and molded their conduct accordingly.

*Lojuk v. Johnson,* 770 F.2d 619, 628 (7th Cir.1985) (Emphasis ours).

■ Plaintiff does not respond to the issue of qualified immunity raised by Defendant. Nevertheless, it has been settled law in the Seventh Circuit since 1988 that sexual harassment by a state or municipal employer constitutes sex discrimination in violation of the equal protection clause, and is actionable under § 1983. *Bohen,* 799 F.2d at 1183. It has also been settled since at least 1986 that supervisors may be liable under § 1983 if their action or failure to act, knowingly, willfully, or recklessly causes a constitutional violation. *Rascon v. Hardiman,* 803 F.2d 269, 274 (7th Cir.1986). Both of these principles were well established at the time of the alleged constitutional deprivations in 1992. Moreover, Plaintiff alleged facts to suggest that Robinson, Mayor Langfelder, and Judd either harassed the Plaintiff or retaliated against Plaintiff for filing her EEOC complaint. These activities may have violated Plaintiff's constitutional rights. *See Gray,* 854 F.2d at 183; *Bohen,* 799 F.2d at 1183. Thus, Robinson, Mayor Langfelder, and Judd should have reasonably known that their actions may have violated constitutional norms.

However, with respect to Defendants Murphy and Cimarossa, the Court does not find the constitutional right to be "clearly established." Plaintiff contends that these Defendants violated her constitutional rights (and Springfield Police Department regulations) by failing to report her harassment complaint. However, the Seventh Circuit has not yet articulated the proper constitutional response to a sexual harassment claim. Indeed, other courts have found that the failure to respond to a sexual harassment complaint does not (at this time) have constitutional implications. *Foster v. Township of Hillside,* 780 F.Supp. 1026, 1046 (D.N.J.), *aff'd,* 977 F.2d 567 (3rd Cir.1992); *see also Poe v. Haydon,* 853 F.2d 418, 427 (6th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989).

Thus, the Court finds that Defendants Murphy and Cimarossa are protected by qualified immunity. Because Plaintiff failed to meet her burden of establishing a clearly established constitutional right, the complaint is dismissed against these Defendants WITHOUT PREJUDICE.

### (3). *Independent basis for § 1983 action*

Lastly, Defendants argue that Plaintiff's § 1983 claim should be dismissed because: (1) the comprehensive remedial nature of

Title VII (after the amendments of the Civil Rights Act of 1991), precludes § 1983 suits from being brought to enforce Title VII rights; (2) no independent basis (from Title VII) has been established to enforce Plaintiff's § 1983 rights in this case.

The Court disagrees.

 To establish a § 1983 cause of action, Plaintiff must show that the sexual harassment attributable to her employer under § 1983 amounted to intentional discrimination or that her employer consciously failed to protect Plaintiff from the abusive conditions created by fellow employees. *Bohen,* 799 F.2d at 1187. Plaintiff satisfied this standard. She alleged that she was intentionally discriminated against by Robinson, Mayor Langfelder and Judd. She also alleged that the other Defendants consciously failed to protect Plaintiff by not reporting the harassment to the proper authorities.

The Court also finds no authority in the Seventh Circuit to support Defendant's proposition that the remedial nature of Title VII suits precludes § 1983 suits to enforce civil rights. Plaintiff established both that the conditions of her employment were affected on account of her sex (Title VII) and that she was intentionally discriminated against (§ 1983). Though the elements and evidence used to prove the Title VII and § 1983 action may be similar, the two causes of action are not mutually exclusive. *See Bohen,* 799 F.2d at 1186–87.

Accordingly, Defendants' motion to dismiss Plaintiff's § 1983 cause of action is DENIED.

### C. *State Claims*

#### (1). *Statute of Limitations*

 Count IX of Plaintiff's Complaint alleges a cause of action against Springfield and Mayor Langfelder for negligently hiring Robinson. Robinson was hired by Springfield on March 4, 1988. He was nominated as Chief of Police on October 24, 1992.

However, Illinois law prohibits actions against local entities or its employees after one year from the date that the injury was received or the cause of action accrued. 745 ILCS 10/8–101 (1993). Plaintiff's cause of action was filed on December 6, 1993. Thus, Defendants argue that Plaintiff's action for negligent hiring Robinson (hired in 1988 or 1992) should be barred by the one-year statute of limitation.

Plaintiff responds that under the "discovery" rule in Illinois, the limitations period begins to run from the date of the last injury or the date when the tortious acts cease. *Leckrone v. City of Salem,* 152 Ill.App.3d 126, 137–38, 105 Ill.Dec. 87, 503 N.E.2d 1093 (5th Dist.1987) (when damages result from an "on-going activity," the limitations period begins to run from the date of the last injury or the date when the tortious acts cease). Because the injury (Robinson's harassment of Plaintiff) continued until 1993, Plaintiff argues that limitation period does not bar this action.

The Court agrees with Defendants. The negligent act of hiring occurred in 1988 or 1992 when Defendant Robinson was hired without an investigation into his past employment. *Doe v. British Universities North American Club,* 788 F.Supp. 1286, 1290 n. 1 (D.Conn.1992);[5] *Caliman v. Mize et al.,* 63 Ohio App.3d 231, 578 N.E.2d 531, 533 (1 Dist.1989) (negligent act of hiring a private investigator occurred, for statute of limitation purposes, when the act of hiring was completed). Moreover, the negligent act of hiring an employee is not an "on-going" activity. Count VIII, which states an action for negligent retention fits the description of an "on-going" activity. "Negligent hiring," on the other hand, is a discrete event which is not "on-going" or continuous.

Accordingly, Count IX is DISMISSED WITH PREJUDICE.

#### (2). *Immunity of Local Officials*

 Next, Defendants argue that Mayor Langfelder and Springfield should be im-

---

**5.** The Connecticut statute of limitation at issue in *Doe* barred any negligence actions for damages " 'brought more than three years from the date of the act or omission complained of ...' Conn. Gen.Stat. § 52–584." *Id.* The court found that

this statute began to run in an action for negligent hiring and screening from the date that the negligent conduct occurred and not the date of the injury sustained by the plaintiff.

mune for any acts resulting from the hiring or retention of Robinson. This is because Illinois law protects public entities from injury "caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2–102. In addition, a "public employee is not liable for an injury caused by his adoption of, or failure to adopt, an enactment, or by his failure to enforce any law." 745 ILCS 10/2–205. Defendants contend that Mayor Langfelder and Springfield were acting in their legislative capacity when they hired or retained Robinson, and should thus be accorded immunity.

The Court does not agree.

First, *Carter v. City of Elmwood*, 162 Ill. App.3d 235, 113 Ill.Dec. 606, 515 N.E.2d 415 (3rd Dist.1987), the case cited by Defendants to support this motion, is inapposite to the facts at bar. In *Carter*, the mayor and city counsel adopted a budget appropriation which cut 40 hours of full-time police employment. This decision eliminated plaintiff's position as a full-time police officer. Plaintiff sued the city for wrongful discharge. The court found that the decision to enact a budget appropriation to cut the police budget was protected under 745 ILCS 10/2–103.

However, in this case, there is no evidence before the Court that the decision to hire or retain Robinson was a "legislative enactment." Rather, at this point, the Court must assume that Robinson was hired and retained to fill an established position. If Defendants present evidence after discovery that the decision to hire Robinson was part of a municipal resolution or enactment, the Court may reconsider this decision.

Second, Defendants cite no other authority to support dismissal under these circumstances.

Accordingly, Defendants' motion for dismissal under the Tort Immunity Act is DENIED at this time.

### (3). *Intentional Infliction of Emotional Distress*

■ Defendants next argue that Plaintiff should not prevail on her claim for intentional infliction of emotional distress and battery against Springfield and Mayor Langfelder because that claim is preempted by the Illinois Workers Compensation Act, 820 ILCS 305/5(a) (1993).

The Court agrees. *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 323–24 (7th Cir.1992) (in suit against employer, harassment by co-employee is barred by workers compensation act).

■ Also, the Court agrees with Defendants' alternative argument that the Complaint does not allege a case of intentional infliction of emotional distress against Mayor Langfelder, Murphy, Cimarossa or Judd. To state a cause of action for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the plaintiff suffered severe emotional distress; and (3) the defendant knew severe emotional distress was certain or substantially certain to result. *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765 (1976).

In her Complaint against Defendants Langfelder, Murphy, Cimarossa and Judd, Plaintiff alleges that these Defendants discriminated against her by: (1) failing to report instances of sexual harassment to the proper authorities (Murphy and Cimarossa); (2) retaliating against her for filing a sexual harassment complaint (Mayor Langfelder and Judd); and (3) harassing her which changed "her conditions of employment" (no specific wrongdoing was alleged) (Judd).

■ However, claims for intentional infliction of emotional distress in employment settings have generally involved circumstances beyond what can be considered a typical employment dispute addressed with a Title VII or § 1983 action. *Piech v. Arthur Andersen & Co., S.C.*, 841 F.Supp. 825 (N.D.Ill.1994) *citing Dean v. Ford Motor Credit Co.*, 885 F.2d 300 (5th Cir.1989) (supervisor intentionally placed checks in plaintiff's purse so she would appear as a thief and fear criminal charges); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1141 (5th Cir.1991) (former vice-president and assistant to the president with thirty years experience demoted to housekeeping chores and menial janitorial jobs under supervisors formerly his subordinates); *Bailey v. Unocal Co.*, 700 F.Supp. 396, 399 (N.D.Ill.1988) (de-

fendant exposed himself to plaintiff and subjected plaintiff to unwelcome sexual advances, sexual comments containing sexual innuendos, and propositions for sexual behavior).

By contrast, Illinois Appellate Courts have affirmed dismissals of intentional infliction of emotional distress claims alleging facts more outrageous than alleged in this case. *See e.g., Miller v. Equitable Life Assur. Soc. of the U.S.*, 181 Ill.App.3d 954, 130 Ill.Dec. 558, 537 N.E.2d 887 (1 Dist.1989) (plaintiff alleged she was surrounded by co-workers who touched her breast, and made vulgar sexual advances to her); *Morrison v. Sandell*, 112 Ill.App.3d 1057, 68 Ill.Dec. 556, 446 N.E.2d 290 (4 Dist.1983) (toilet tissue and human waste matter was placed in a drawer the plaintiff would open).

Here, Plaintiff's most extreme claim (against these Defendants) is that her resume was not forwarded for an available job opening at another agency and that she was subjected to unspecified threats, a verbal quarrel, and unspecified changed conditions of employment by Defendant Judd. Thus, the Court cannot find them "extreme or outrageous" at this time.

Accordingly, Plaintiff's cause of action for intentional infliction of emotional distress against Defendants Springfield Mayor Langfelder, Murphy, Judd, and Cimarossa is DISMISSED WITHOUT PREJUDICE.

#### (4) *Negligent infliction of emotional distress*

Defendant Langfelder next moves to dismiss Count VII entitled "Negligent infliction of emotional distress."

However, Mayor Langfelder offers no authority in support of his argument that he did not have a duty to Plaintiff, or did not breach a duty to Plaintiff. Moreover, Plaintiff alleged that Mayor Langfelder breached his duty by retaliating against her when she filed a complaint with the EEOC.

Accordingly, Defendant Langfelder's motion to dismiss Count VII is DENIED.

#### (5). *Negligent retention*

Finally, Defendants argue that Plaintiff's cause of action for negligent retention (Count VIII) should be dismissed because Plaintiff failed to allege that the harassment continued beyond the time she made complaints to Defendants Cimarrosa and Murphy.

The Court finds that Defendants' argument is simply not true. Plaintiff's Complaint contains numerous allegations against Mayor Langfelder, Judd, and Robinson after she complained to Cimarrosa and Murphy.

### III. *Conclusion*

*Ergo*, in accordance with the above order, Defendants' motion to dismiss (d/e 2) is ALLOWED IN PART.

Counts I, II, and IV of Plaintiff's Complaint are DISMISSED WITHOUT PREJUDICE as to all Defendants.

Count III, which the Court will assume at this time is an "official capacity" cause of action is DISMISSED WITHOUT PREJUDICE as to all Defendants except the City of Springfield.

Count V is DISMISSED WITHOUT PREJUDICE only against Defendants Murphy and Cimarossa. The Court finds that only these Defendants are protected by qualified immunity. Count V remains in force against the other Defendants.

Count VI is DISMISSED WITHOUT PREJUDICE as to Defendants Langfelder, Judd, Cimarossa, and Murphy.

Count IX is DISMISSED WITH PREJUDICE.

Count X is DISMISSED WITHOUT PREJUDICE as to all Defendants except Defendant Robinson.